UNITED STATES, Appellee,

v.

Private First Class Charles A. SIMPSON,
United States Army, Appellant.

ARMY 20000940.

U.S. Army Court of Criminal Appeals.

20 Aug. 2004.

For Appellant: Colonel Robert D. Teetsel,
JA; Lieutenant Colonel E. Allen Chandler,
Jr., JA; Captain Kathleen D. Schmidt, JA;
Captain Linda A. Chapman, JA (on brief);
Colonel Robert D. Teetsel, JA; Lieutenant
Colonel Mark Tellitocci, JA; Major Sean S.
Park, JA; Captain Jeremy W. Robinson, JA
(on specified issues).

For Appellee: Lieutenant Colonel Marga-
ret B. Baines, JA (on brief); Colonel Lauren
B. Leeker, JA; Lieutenant Colonel Margaret

B. Baines, JA; Major Natalie A. Kolb, JA; Captain Michael D. Wallace, JA (on specified issues).

Before MERCK, Senior Judge, JOHNSON, and MOORE, Appellate Military Judges.

## OPINION OF THE COURT

MERCK, Senior Judge:

A special court-martial composed of officer members convicted appellant, contrary to his plea, of conspiracy to commit larceny, in violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three months, forfeiture of $620 pay per month for three months, and reduction to Private E1.

After this case was presented to this court for review on its merits pursuant to Article 66, UCMJ, 10 U.S.C. § 866, we specified the following two issues: (1) whether the military judge erred when he admitted the accomplice's sworn statement, and (2) whether the military judge erred when he refused to give the defense requested accomplice testimony instruction. Appellant avers and the government concedes that these issues are meritorious and that the findings and sentence must be set aside. We agree.

## CONFRONTATION CLAUSE

### FACTS

The government charged appellant with conspiring with Private E2 (PV2) Ronald Borboa to steal Private First Class (PFC) Rosales' laptop computer, valued at $1,800. Private E2 Borboa made two statements to Army Criminal Investigation Command (CID) agents. In his first statement, dated 14 August 2000, PV2 Borboa stated that he took PFC Rosales' computer to get back at him for taking PV2 Borboa's wallet. Private E2 Borboa put the computer in his backpack and took it to a pawn shop. The pawn shop owner knew it was stolen but still paid PV2 Borboa $200 for the computer. Private E2 Borboa spent the money. Private E2 Borboa's initial statement contained no reference to appellant.

Private Borboa's second statement to CID, dated 16 August 2000, reflects the following:

I met PFC SIMPSON [the appellant] when I first arrived at the unit back in Jul 00 .... Around 28 Jul 00, I was approached by PFC SIMPSON who asked about the whereabouts of PFC ROSALES' laptop computer. I told him that PFC ROSALES, kept his laptop computer on top of the refrigerator most of the time. He also asked me if I wanted to get together, take PFC ROSALES' computer and take it ... to get some money. I told him that I didn't know. On 12 Aug 00, PFC SIMPSON approached me and suggested [to] me to take PFC ROSALES' computer and give it to him. PFC SIMPSON gave me the idea to wait for PFC ROSALES to go to the mess hall, remove the computer out of his room, and then say that he left the room unsecured and that someone stole it from him. About 1115, 12 Aug 00, I went to PFC ROSALES' room to take his computer, but when I went in, I noticed that he was sleeping [in] his room. I then stepped outside, to PFC SIMPSON's room and told him that he was sleep [sic], and I thought that the plan of stealing PFC ROSALES' computer was over, because he was there.

. . . .

PFC SIMPSON took me to his room and told me that he went into ROSALES' room and tried to wake him up, but he didn't wake up. PFC SIMPSON then told me to go to the room and take his computer away. I told him that I didn't want to get in trouble by doing that. PFC SIMPSON then told me to 'come on, let's get this thing.' I then went in PFC ROSALES' room and took his laptop computer from the refrigerator. I then stepped outside the room and gave the laptop computer to PFC SIMPSON. PFC SIMPSON went to his room and opened the case and removed the computer from the case[.]

. . . .

He then placed the computer and all the parts in the computer case, placed the case

in a black backpack and then he put the backpack inside his wall locker, and locked the wall locked [sic].

. . . .

I then met with PFC SIMPSON who had the backpack with him. PFC SIMPSON suggested taking the computer ... to pawn it.

. . . .

PFC SIMPSON took me to the E–Z pawn-shop and talked to the owner and told him that the computer was mine and that I wanted to sell it.

. . . .

The owner gave the money to PFC SIMPSON who took the money and then we left the store. While outside the store, PFC SIMPSON gave me $100.00 from the $200.00 he received from the pawn shop owner.

. . . .

Q: Did you make a [prior] false statement with the intent of [sic] deceive this investigation?

A: No, I just didn't want to get in trouble and become a 'snitch'.

Appellant also made a sworn statement to CID, dated 16 August 2000. In it, he stated that he discussed taking PFC Rosales' laptop computer with PV2 Borboa as a joke because PFC Rosales left the computer unsecure. Private E2 Borboa took PFC Rosales' laptop computer. Appellant said that PV2 Borboa asked if they were going to sell the computer. Appellant stated that he "got stupid" and told PV2 Borboa they would take care of that later. Appellant put the computer in his backpack, and he and PV2 Borboa went to the mess hall to eat. When they returned, they took the computer to a pawn shop. Appellant discussed selling the computer with the pawnshop owner who negotiated a price with PV2 Borboa. The pawnshop own-er gave appellant $200 for the computer; appellant and PV2 Borboa each took $100.

At trial, the military judge admitted appellant's sworn statement. Thereafter, the government sought to introduce PV2 Borboa's second statement, implicating appellant, as a statement against interest.[1] Alternatively, the trial counsel asserted that the statement was admissible as residual hearsay.[2] Defense counsel objected, stating that admitting PV2 Borboa's second statement violated the Constitution's Confrontation Clause. Private E2 Borboa, through his defense counsel, expressed his intent to exercise his right against self-incrimination if called to testify. The government did not give PV2 Borboa testimonial immunity. The military judge found PV2 Borboa unavailable to testify and admitted his second statement. During the defense case, the defense counsel offered, and the military judge admitted, PV2 Borboa's first statement.

### LAW

We conduct a *de novo* review to determine whether the military judge's decision to admit hearsay statements violates the Confrontation Clause. *United States v. Triplett,* 56 M.J. 875, 881 (Army Ct.Crim.App.2002) (citing *United States v. Egan,* 53 M.J. 570, 574 (Army Ct.Crim.App.2000)).

### Historical Development of the Confrontation Clause

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him ...." U.S. Const. amend. VI. The Supreme Court has stated that the Confrontation Clause envisions:

> a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895). The Court later emphasized that the right to cross-examination is so important in testing

---

1. *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 804(b)(3) (statements against interest).

2. *See* Mil. R. Evid. 807 (residual hearsay).

the reliability of testimony that it is "'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (quoting *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). The Court also recognized, however, that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 295, 93 S.Ct. 1038.

In *Ohio v. Roberts*, the Supreme Court analyzed "the relationship between the Confrontation Clause and the hearsay rule with its many exceptions." 448 U.S. 56, 62, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Court observed that while a literal reading of the Sixth Amendment's language would require the exclusion of any statement not made at trial, such an extreme result had long been rejected. *Id.* at 63, 100 S.Ct. 2531. It stressed that an accused's right to confrontation had to be balanced with public policy considerations such as society's interest in "effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." *Id.* at 64, 100 S.Ct. 2531. The Court explained the general framework of the requirements of the Confrontation Clause by stating:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. 2531.

In 1999, the Supreme Court used the *Roberts* test to analyze statements admitted under the statement against interest exception to the hearsay rule. *Lilly v. Virginia*, 527 U.S. 116, 125, 119 S.Ct. 1887, 144 L.Ed.2d 117. The Court reiterated that a hearsay exception is "firmly rooted if, in light of longstanding judicial and legislative experience, it rests [on] such [a] solid foundation that admission of virtually any evidence within [it] comports with the substance of the constitutional protection." *Id.* at 126, 119 S.Ct. 1887 (internal quotations and citations omitted). The Court explained that the standard was "designed to allow the introduction of statements falling within a category of hearsay whose conditions have proven over time 'to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath' and cross-examination at a trial." *Id.* (quoting *Mattox*, 156 U.S. at 244, 15 S.Ct. 337). The Court held that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Id.* at 134, 15 S.Ct. 337.

In 2004, after re-examining the framers' intent behind the Confrontation Clause, the Court overruled *Roberts*. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177. The Court explained that "[t]he *Roberts* test allow[ed] a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replace[d] the constitutionally prescribed method of assessing reliability with a wholly foreign one." *Id.* at 1370. The Court declared that "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with [a] jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." *Id.* at 1371.

The Court emphasized that the Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Id.* at 1364 (quoting 1 N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)). It noted that "testimony" is "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* The Court explained that the Confrontation Clause pertains not only to in-court testimony of a witness, but also to out-of-court statements of a testimonial nature. *Id.* The

Court clarified that not all out-of-court statements were implicated by the Confrontation Clause because "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*

In rejecting the *Roberts* test, the Court stated that "the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 1374. "Where testimonial evidence is at issue . . ., the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* The Court declined to "spell out a comprehensive definition of 'testimonial' " but stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court noted that they "use[d] the term 'interrogation' in its colloquial, rather than any technical, legal sense." *Id.* at 1365 n. 4.

### DISCUSSION

■ Private E2 Borboa's second sworn statement was inadmissible, whether analyzed under *Roberts*, the law applicable at the time of appellant's court-martial, or under *Crawford*, the current law.

Initially, we find that the military judge erred when he found PV2 Borboa unavailable, a prerequisite for admissibility under either the *Roberts* or *Crawford* test. *See Crawford*, 124 S.Ct. at 1374; *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

[A] prosecution witness is not 'unavailable' under [Military Rule of Evidence] 804(a)(1) even though he asserts his privilege against self-incrimination if he can be made available through the granting of testimonial immunity . . . . The prosecution has an option; it can either do without the evidence or it can introduce appropriate hearsay statements of an absent witness; however, if the absence can be cured by testimonial immunity, such immunity must be granted. The confrontation clause of the U.S. Constitution requires nothing less.

*United States v. Dill,* 24 M.J. 386, 389 (C.M.A.1987) (quoting *United States v. Valente,* 17 M.J. 1087, 1088–89 (A.F.C.M.R. 1984)).

Moreover, Private E2 Borboa's second statement does not fall within a firmly rooted exception to the hearsay rule. *See Lilly,* 527 U.S. at 134, 119 S.Ct. 1887; *Triplett,* 56 M.J. at 881. Nor did the military judge conduct any analysis to determine whether the statement was reliable, i.e., that there had been "a showing of particularized guarantees of trustworthiness." *See Roberts,* 448 U.S. at 66, 100 S.Ct. 2531. Additionally, the statement, made to law enforcement officials, was clearly of a testimonial nature. *See Crawford,* 124 S.Ct. at 1374. There was no opportunity for confrontation, i.e. the opportunity for appellant to cross-examine PV2 Borboa, as required by *Crawford. See id.* Therefore, under either *Roberts* or *Crawford*, appellant's right to confrontation under the Sixth Amendment was violated when the military judge admitted PV2 Borboa's second statement.

### HARMLESS ERROR ANALYSIS

■ If the military judge admitted the statement in violation of the Constitution, "we cannot affirm the findings unless we determine beyond a reasonable doubt that the error did not contribute to the findings of guilty." *United States v. Hall,* 58 M.J. 90, 94 (C.A.A.F.2003) (citing *United States v. Walker,* 57 M.J. 174, 178 (C.A.A.F.2002)). " 'Our focus is not on whether the members were right in their findings but, rather, on whether the error had or reasonably may have had an effect upon the members' findings.' " *Id.* (quoting *United States v. Bins,* 43 M.J. 79, 86 (C.A.A.F.1995)); *see also Egan,* 53 M.J. at 574.

The panel was essentially left with the three conflicting sworn statements to determine appellant's guilt. The combination of all of these statements could have affected the members' findings.

### ACCOMPLICE TESTIMONY INSTRUCTION

#### FACTS

When the parties discussed instructions, the following colloquy ensued:

DC: For the record, ... you denied the defense's request for the accomplice testimony instruction.

MJ: No, I didn't deny it, counsel. I told you I was disinclined to give it. Why don't you tell—For the record, why don't you say what it is you want?

DC: On the record, Your Honor, the defense would like the accomplice testimony instruction to be added to the now—the instructions which you have provided us with thus far.

. . . .

MJ: Why is it that you believe that that should be given?

DC: Your Honor, in this case, we have a statement made by a person who is criminally—allegedly criminally involved in this offense, points every finger at my client. It is an instruction which will allow the panel to question the believability of the— of the testimony given in the form of a statement by this unavailable witness. It is—The instruction is clear. It states that a witness' believability or motive to falsify his or her testimony in whole or in part because of self-interest under the circumstances. We have not had the chance to cross-examine this witness. All we have is a statement pointing fingers at my client. There is another statement by that same person which contradicts that second statement and that instruction is just necessary in order to allow the panel to question the believability and reliability of that statement.

MJ: You're certainly in a position—

DC: Further—

MJ: Yes.

DC: If I may, Your Honor. Sorry. *United States versus Gillette*, 35 MJ 468, holds that whenever evidence raises a reasonable inference that a witness may have been an accomplice or claims to have been an accomplice of the accused, and upon request of either the government or the defense, the military judge shall give the members

a cautionary instruction regarding accomplice testimony.

MJ: Well, my biggest concern, counsel, is we don't have a witness here about which this instruction seems to be addressed.

DC: Your Honor, but we have a statement, which is a major part of their case. That instruction will caution the panel about the reliability of that one statement. Unfortunately, we don't have the actual person subject to cross-examination—

MJ: Do you have a case that says that the court has to give an instruction under these circumstances where we're not talking about a witness? We're talking about a statement by an individual who is unavailable. I would note that most of the instruction would appear to simply not apply to the individual who is not here. It talks about obvious self-interest under the circumstances. If that were the case, counsel, the statement would never have come in. If there was a statement made against his punitive interest—it talks about obvious motives to lie and to falsify. There seems to be no evidence of any obvious motive of any kind on the part of the individual to lie in any form or fashion. The only alleged lie in this case was the lie allegedly to not be a snitch, to cover up for your client.

DC: Your Honor—

MJ: Any accomplice statement—any accomplice instruction would look nothing like 7–10.[3] This one simply doesn't apply.

DC: Is there a cautionary instruction that you may be aware of or can think of to caution the members about the inference of this being a potential co-accused, someone involved in this alleged criminal act, cautioning the members that we don't know what the motives were and that the reliability—

MJ: Well, you're free—you're free to argue that, counsel. I will give the usual instructions about credibility of witnesses, and keeping an open mind, and the burden of proof, and all of those things, which I think collectively are designed to ensure that justice is carried out and that they

---

**3.** The military judge was apparently referring to the accomplice testimony instruction. *See* Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, para. 7–10 (30 Sept. 1996) [hereinafter Benchbook].

follow the rules. So, I hear you, but I'm going to deny your request for 7–10, which is the Accomplice Testimony. I simply don't think it applies in this case.

## LAW

■ Whether a jury was properly instructed is a question of law, which this court reviews *de novo*. *United States v. Hibbard,* 58 M.J. 71, 75 (C.A.A.F.2003) (citing *United States v. McDonald,* 57 M.J. 18, 20 (C.A.A.F. 2002)). "While counsel may request specific instructions, the military judge has substantial discretion in deciding on the instructions to give and whether the requested instruction is appropriate." *United States v. Miller,* 58 M.J. 266, 270 (C.A.A.F.2003) (citing *United States v. Smith,* 34 M.J. 200, 203 (C.M.A. 1992)). The three-pronged test for determining whether failing to give a specific instruction is error is whether: "(1) the [requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [the accused] of a defense or seriously impaired its effective presentation." *United States v. Gibson,* 58 M.J. 1, 7 (C.A.A.F.2003) (internal citations omitted).

■ " '[W]henever the evidence raises a reasonable inference that a witness may have been an accomplice ..., and upon request of either the Government or defense, the military judge shall give the members a cautionary instruction regarding accomplice testimony.' " *Gibson,* 58 M.J. at 6 (quoting *United States v. Gillette,* 35 M.J. 468, 470 (C.M.A. 1992)). The test to determine if a "witness is an accomplice is whether the witness could be convicted of the same crime." *Id.* (citing *United States v. McKinnie,* 32 M.J. 141, 143 (C.M.A.1991)). Failure to give an accomplice instruction, however, is a nonconstitutional error. *Id.* at 7. "Accordingly, the test for harmlessness is whether the instructional error had 'substantial influence' on the findings. If it did, or if we are 'left in grave doubt, the conviction cannot stand.' " *Id.* (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

## DISCUSSION

The military judge erred in failing to give the requested accomplice testimony instruc-tion. First, the requested instruction was correct. There was a plethora of evidence implicating PV2 Borboa as an accomplice and the defense properly requested the instruction.

The military judge, however, concluded that because the accomplice instruction refers to a "witness," it only applies when a purported accomplice testifies at trial. This interpretation overlooks the underlying purpose of the instruction. As the Supreme Court has stated, an accomplice's testimony that incriminates an accused "ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." *Lilly v. Virginia,* 527 U.S. 116, 131, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting *Crawford v. United States,* 212 U.S. 183, 204, 29 S.Ct. 260, 53 L.Ed. 465 (1909)). When such testimony is received, the military judge must instruct the members to receive it with caution. *Gibson,* 58 M.J. at 6.

■ The cloak of suspicion surrounding incriminating statements made by an accomplice exists regardless of whether the statements are made in or out of court. *Lilly,* 527 U.S. at 130–31, 119 S.Ct. 1887 (stating that an accomplice's hearsay confession which incriminates a criminal defendant is inherently unreliable). In fact, the suspicious nature of the statement is heightened further where, as in this case, the declarant is not subject to cross-examination by the defense. *See Lilly,* 527 U.S. at 132, 119 S.Ct. 1887 (stating that "the truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination") (quoting *Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). Therefore, we hold that when a statement by an accomplice is admitted, the military judge must provide a properly tailored instruction regardless of whether the statements are in-court testimony or out-of-court hearsay.

■ Second, the accomplice "instruction advises the members that an accomplice's

testimony, even if it is corroborated and apparently credible, 'is of questionable integrity and should be considered by [the court members] with great caution.'" *Gibson*, 58 M.J. at 5 (quoting Benchbook, para. 7–10 (1 April 2001)).[4] No other instruction given by the military judge in this case substantially covered that advice.

Third, because the statement was essential government evidence, the military judge's failure to place it in context for the panel members seriously impaired the defense case. The panel members had to consider PV2 Borboa's two contradicting statements regarding appellant's involvement. Defense counsel's argument that PV2 Borboa's second statement was untrustworthy or unreliable was unimpressive without the instruction to lend credibility to his argument.

## DECISION

Both errors by the military judge were of such magnitude that they would individually require us to consider setting aside the findings and sentence. We are convinced that the cumulative effect of the errors deprived appellant of his right to a fair trial.

Accordingly, the findings and the sentence are set aside. The same or different convening authority may order a rehearing. If the convening authority determines that a rehearing is impracticable, he may dismiss The Charge and its Specification.[5]

Judge JOHNSON and Judge MOORE concur.

4. This is the same language in the version of the Benchbook applicable at appellant's court-martial, Benchbook, para. 7–10 (30 Sept. 1996), and in the current version of the Benchbook. Benchbook, para. 7–10 (15 Sept. 2002).

5. Appellant was found not guilty of The Specification of Charge II and Charge II (wrongful solicitation to commit larceny). We renumbered The Specification of Charge I and Charge I as The Specification of The Charge and The Charge.