**UNITED STATES, Appellee,**

v.

**Sergeant First Class Melvin ACOSTA–ZAPATA, United States Army, Appellant.**

**ARMY 20021346.**

U.S. Army Court of Criminal Appeals.

8 March 2007.

For Appellant: Colonel Mark Cremin, JA; Major Allyson G. Lambert, JA; Captain Charles L. Pritchard, Jr., JA (on brief).

For Appellee: Lieutenant Colonel Theresa A. Gallagher, JA; Major William J. Nelson, JA; Captain Larry W. Downend, JA (on brief); Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Captain Magdalena A. Acevedo, JA; Captain Larry W. Downend, JA (on supplemental brief).

Before MAHER, SULLIVAN, and HOLDEN, Appellate Military Judges.

## OPINION OF THE COURT

HOLDEN, Judge:

A panel of officer members sitting as a general court-martial convicted appellant, contrary to his pleas, of carnal knowledge, indecent acts with a child, indecent acts with another, and two specifications of adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for twenty-four months, forfeiture of all pay and allowances, reduction to Private E1, and a reprimand. This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellate defense counsel assert, *inter alia*, the military judge erred by refusing to instruct the panel as to the defense-requested mistake-of-fact defense regarding the victim's age for the indecent acts with a child offense. The defense urges us to set aside the finding of guilty to the indecent acts with a child offense, affirm the lesser-included offense of indecent acts with another, and order a sentence rehearing. We find the asserted error harmless beyond a reasonable doubt and affirm the findings of guilty and the sentence.

### FACTS

#### Background

Appellant, a married thirty-three-year-old acting First Sergeant in the 82d Airborne Division, had sexual relations with two teenage girls in the presence of two of his subordinates in late April 2001.

Appellant was performing temporary duty (TDY) at Fort Huachuca, Arizona, in April and May 2001, with other soldiers from his unit. The soldiers were billeted in a hotel located in Sierra Vista, Arizona, approximately five miles from the installation and one mile from a local shopping mall. In April 2001, appellant and two of his subordinates, Specialist (SPC) Johnson and SPC Maldonado, both twenty years old, went to the mall. The two soldiers testified they agreed with appellant to use assumed names when they "went out" while TDY, and that appellant's assumed name was "Kenny." While at the mall, SPC Johnson and SPC Maldonado met two girls, Ms. CS (age fifteen) and Ms. BS (age seventeen), and talked to them for a while. Although appellant was not a participant in the conversation, he observed them talking, and SPC Johnson and SPC Maldonado pointed out appellant as "Kenny."

After a couple of weeks of telephone conversations with the girls, during which SPC Johnson and SPC Maldonado continued to use their false names, they arranged to meet the girls one night after midnight. They borrowed a van and picked up the girls, including a third girl, Ms. AB (age sixteen). The girls left the mobile home where they were staying by sneaking out of a window. The soldiers gave the girls alcoholic beverages, brought them to the hotel room the soldiers shared, and continued giving them alcohol. Appellant came to the room and saw the soldiers with the three girls. He informed the soldiers he was going out and then departed. After a while, Ms. AB had sexual intercourse with SPC Johnson while Ms. CS had sexual intercourse with SPC Maldonado. Ms. BS watched cartoons in the same room. Each couple and Ms. BS were in view of each other while the girls had sex with the soldiers. Ms. BS later pulled the covers off both couples as a prank, verified they were having sexual intercourse, and eventually left the room.

The following evening, the basic scenario repeated itself, varied by the girls providing their own alcohol. At around 0300, appellant knocked and entered the room. Appellant went to the bed where SPC Maldonado was sitting with Ms. CS and started talking to the girl. Specialist Maldonado began "kissing and touching [Ms. CS]," and noticed "[appellant] gave [him] that look of, you know, let's do something together." Appellant and SPC Maldonado began kissing and fondling the girl at the same time. Specialist Maldonado did not like it when he inadvertently made contact with appellant's hands while he was also fondling the victim's breasts and vagina. As a result, SPC Maldonado got out of the bed and went to the bathroom where he

relaxed with a beer. As SPC Maldonado moved from the bed to the bathroom, he noticed appellant was on top of Ms. CS, "moving like side to side" and "kissing her neck." When SPC Maldonado exited the bathroom ten to fifteen minutes later, appellant was getting out of bed clad only in his boxer shorts and Ms. CS was naked. Specialist Maldonado then got back into bed and again had sexual intercourse with Ms. CS.

Appellant then went over to the other bed where SPC Johnson and Ms. AB were having sex. He tapped SPC Johnson on the shoulder and said, "Let me get a piece." As SPC Johnson got out of his bed, appellant got into bed with Ms. AB. Specialist Johnson then went to the bathroom for "two or three minutes ... to clean [himself] off." He heard appellant and Ms. AB "moaning and groaning," but did not see them actually having intercourse because they were under the covers. Ms. AB testified that she resisted appellant when he tried to put his penis into her vagina, but he held her shoulders down and penetrated her vagina with his penis for only a brief period. She said appellant desisted after she continued trying to push him off her, and he then went back to the other bed.

A few days later, Ms. BS's mother advised local police that underage girls were having sex with soldiers at the hotel. She also called their unit to report the activity and spoke to appellant, the unit's acting First Sergeant, unaware that he was a participant in the sexual misconduct. Appellant advised the soldiers of the complaint and police interest shortly before the civilian police arrived at the hotel. The police found Ms. BS and Ms. CS hiding in SPC Johnson and SPC Maldonado's hotel bathroom and took Ms. BS into custody as a runaway. The soldiers then sent Ms. CS home in a taxicab.

Ms. BS's mother also advised the Criminal Investigation Command (CID) at Fort Huachuca regarding the sexual misconduct at the hotel. Special Agent (SA) Mish testified that he and other agents went to the hotel to investigate. They met appellant in the hotel lobby. Appellant declined to reveal the reason for his unit's presence in the hotel, claiming it was "top secret." Appellant asked why the CID agents were there and, because appellant was the acting First Sergeant of the suspects' unit, the agents advised him of the suspects' identities and purpose of the visit. Specialist Johnson and SPC Maldonado were then apprehended. According to SA Mish, appellant then "accompanied [SA Mish] most of the day ... in [his] vehicle asking questions [about] what [SA Mish] thought would happen to [SPC] Maldonado and [SPC] Johnson[, and] what [SA Mish] knew about the investigation.... [Appellant] then came back to the office with [SA Mish], and was in [the] waiting area for most of the evening." Special Agent Mish testified he continued to provide investigative information and progress updates to appellant as requested because of appellant's position of authority in the suspects' unit.

Ms. BS's mother brought the girls to the CID office to be interviewed. Unnoticed by anyone else, Ms. BS observed appellant at the CID office and said, "Hi, Kenny." Ms. BS testified appellant replied, "Shh, ... [my] name is Mel." After the girls reported what had transpired in the hotel room, Ms. BS mentioned to her mother she had seen "Kenny" in the CID office waiting room before the interviews began. The case agent determined that the only person in the waiting room at the time had been appellant. Concluding that appellant and "Kenny" were the same person, the agents briefed their supervisor who directed them to apprehend appellant.

Appellant waived his rights to counsel and to remain silent after being properly warned, and submitted to questioning by SA Mish. Initially, appellant denied any wrongdoing and related he knew about the offenses because Ms. BS's mother called him to complain about SPC Johnson and SPC Maldonado having sex with two of the teenagers. Special Agent Mish told appellant he had already taken statements from the two subordinates and the teenage girls and therefore knew appellant was involved in sexual misconduct. He urged appellant to be truthful.

Special Agent Mish testified that after approximately fifteen minutes of being interviewed, during which time appellant "adamantly denied any sexual contact with any of

[the] girls," appellant eventually "took a big sigh, rolled his head down" and admitted he had sexual intercourse with Ms. CS. When asked how long the intercourse lasted, appellant told SA Mish he stopped after "approximately two minutes" because "it didn't feel right; ... [appellant] didn't have a good feeling about it." When asked whether Ms. CS's apparent age caused him to feel uneasy, he said, "[Y]eah[,] that might have been it." Pressed for an estimate of Ms. CS's age, appellant said he "thought she was 19 years old." Special Agent Mish told appellant that "[no] normal person would ... have considered her even close to [19]," ... and that if appellant thought Ms. CS "was 19 years old, he would not have got off her." Appellant "again sighed, lowered his head, [and] ... said[,] 'I thought she may be 15 or 16 years old.'" Special Agent Mish testified he then said to appellant, "[Y]ou believed this girl not to be of age then," and appellant replied, "[R]ight[,] that's why I got up and left."

Appellant provided a written sworn statement in which he admitted having sex with Ms. CS, but "adamantly said no" when asked if he had sex with Ms. AB. Appellant claimed he approached Ms. AB, kissed her neck, and she asked him to have sex with her. Appellant further claimed that when he attempted sexual intercourse, Ms. AB refused him before penetration, so he left the room.

After three days of additional investigation, the CID asked appellant to return for a clarification interview. Appellant again waived his rights to counsel and to remain silent after being properly re-advised of those rights and "said he wanted to cooperate." In a subsequent written sworn statement, appellant also confessed to having sex with Ms. AB and admitted his penis was inside her vagina for "about one minute." He admitted he previously denied sexual intercourse occurred "because [he] did not consider [penetration of such short duration] sex."

Appellant's two written sworn statements were admitted at trial against appellant.[1] Both subordinates and all three girls testified against appellant. When asked whether appellant used any aliases, SA Mish testified appellant said he used the nickname "Kenny."

### Developments at Trial

After both parties presented their cases on the merits, the military judge conducted an Article 39(a), UCMJ, session to discuss findings instructions. Trial defense counsel specifically requested a mistake-of-fact-as-to-age instruction regarding the offense of indecent acts with a child. Trial defense counsel noted that Congress created a mistake-of-fact defense for carnal knowledge when it revised the statute proscribing such conduct, and urged the military judge to give the instruction for the analogous offense of indecent acts with a child. Arguing against applying the more stringent threshold for providing the instruction as articulated in *United States v. Strode*, 43 M.J. 29 (C.A.A.F.1995), trial defense counsel noted that Strode was decided prior to the 1996 Congressionally-established mistake-of-fact defense for carnal knowledge.[2]

The military judge agreed the evidence raised a mistake-of-fact defense regarding the offense of carnal knowledge and that an instruction as to that defense was appropriate for that particular charge. However, the military judge denied trial defense counsel's request to give a similar mistake-of-fact instruction pertaining to the offense of indecent acts with a child. The military judge opined that Congress deliberately added a mistake-of-fact defense for carnal knowledge and could have done so for indecent acts with a child at the same time, but did not. The military judge presumed that refraining from adding such a provision for indecent acts with a child was a deliberate act of Congressional intent. Noting that the law regarding mistake-of-fact as to age for indecent acts with a child was apparently unchanged from

---

**1.** Assistant defense counsel objected to admission of the statements because they were not the original documents; the military judge properly overruled the objection.

**2.** *See* National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, 110 Stat. 186 (codified in 10 U.S.C. § 920(d)).

its espousal in *Strode*, the military judge said:

> [F]or mistake of fact to be available[, there is] ... a two part test. It's a defense if [appellant] had an honest and reasonable belief as to the age of the person, *and* if his acts would otherwise be lawful for the girl or female involved age 16 or older. So, I think you'd have an argument if it were just the accused and [Ms. CS] in a room all by [themselves] and no one [else] present. If he [was] there [alone] with an adult female[,] that would not be an indecent act because it's not open to the public. It's not open and notorious. No one from the public sees it. Regardless of the age of the female in this case, if a group of people are in a room together[,] and one is placing his penis against the vagina of another[,] the members could [conclude that act] is indecent whether the girl is 16 or 65.

(Emphasis added.)

When the military judge subsequently asked whether the parties had any objections to the proposed instructions, trial defense counsel again requested an instruction on the mistake-of-fact defense for indecent acts with a child and steadfastly maintained the defense was raised by the evidence. The military judge responded:

> Under *Strode*, you're overruled. *Strode* clearly states it's a conjunctive test[,] not a disjunctive test, and since the act would be an indecent act no matter the age of the person involved[,] it's not a defense, *at least under the current case law.*

(Emphasis added.)

The military judge then gave findings instructions that included the mistake-of-fact defense for carnal knowledge, but not for indecent acts with a child.[3] The members convicted appellant of all offenses as charged.

During a presentencing Article 39(a) session, the military judge granted a defense request to consider the offenses of carnal knowledge and indecent acts with a child to be one offense for sentencing purposes. The military judge subtracted seven years of confinement (the maximum term for indecent acts with a child) from the thirty-four-year maximum term available for appellant's offenses; he later instructed the members that the maximum period of confinement was twenty-seven years and that they should "consider that [the adultery and carnal knowledge offenses with Ms. CS] arose out of the same incident in determining an appropriate sentence."

## LAW

### Instructions

Whether a military judge properly instructed the panel members is a question of law this court reviews de novo. *United States v. Simpson*, 60 M.J. 674, 680 (Army Ct.Crim.App.2004) (citing *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F.2003), and *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F.2002)). Our court also examines "the substance of any instructions given[ ] to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." *United States v. Jenkins*, 59 M.J. 893, 897 (Army Ct.Crim.App.2004) (citing *McDonald*, 57 M.J. at 20) (internal quotation marks omitted).

Absent a specific defense counsel request, "a military judge has a sua sponte duty to give certain instructions when reasonably raised by the evidence, including a defense instruction as to the affirmative mistake[-]of[-]fact defense." *Hibbard*, 58 M.J. at 75; *see also United States v. Dacosta*, 63 M.J. 575, 582 n. 8 (Army Ct.Crim.App.2006) (elaborating on affirmative-defense instructions). Furthermore, when a military judge instructs panel members on findings, he also

---

**3.** Over defense objection, the military judge instructed on the lesser-included offenses of attempted carnal knowledge and attempted adultery, both involving Ms. CS. We find no error regarding the military judge's decision to proactively instruct on those lesser-included offenses. *See United States v. Gutierrez*, 64 M.J. 374, 377 (C.A.A.F.2007) (citing Rule for Courts–Martial

[hereinafter R.C.M.] 920(e) and noting a military judge's sua sponte duty to give required instructions reasonably raised by the evidence). Consistent with his articulated rationale on the greater offenses, the military judge gave a mistake-of-fact-defense instruction with his instructions on the lesser-included offense of attempted carnal knowledge.

"bears the primary responsibility for ensuring that mandatory instructions ... are given and given accurately." *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F.2003); R.C.M. 920(a) ("The military judge shall give the members appropriate instructions on findings.").

Mandatory instructions on findings include a "description of the elements of each offense charged[,] ... each lesser[-]included offense *in issue*[, and] ... any special [or affirmative] defense under R.C.M. 916 in issue." R.C.M. 920(e)(1)-(3) (emphasis added). As explained in the discussion accompanying R.C.M. 920(e), a "matter is 'in issue' when some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose." R.C.M. 920(e) discussion; *United States v. Terry*, 64 M.J. 295, 299 (C.A.A.F.2007) (stating same); *United States v. Dearing*, 63 M.J. 478, 484 n. 20 (C.A.A.F.2006) (citing R.C.M. 920(e)). "When an affirmative defense is raised by the evidence, an instruction is required." *McDonald*, 57 M.J. at 20.

 However, where trial defense counsel specifically requests an instruction, and the military judge denies that request, this court reviews "the military judge's denial of [the] requested instruction ... for abuse of discretion." *United States v. Carruthers*, 64 M.J. 340, 345–46 (C.A.A.F.2007) (citing *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A.1993)). In evaluating whether the military judge's failure to give the requested instruction constitutes error, we will apply a three-prong test to determine whether the requested instruction: (1) was "correct;" (2) "not substantially covered in the main instruction;" and (3) covers "such a vital point in the case that the failure to give it deprived [appellant] of a defense or seriously impaired its effective presentation." *Id.* at 346 (original alterations and internal quotation marks omitted).

 Where error is found in the military judge's failure to give a requested and required mistake-of-fact instruction, such error is of Constitutional magnitude. *See McDonald*, 57 MJ. at 20; *cf. United States v. McAllister*, 64 M.J. 248, 251 (C.A.A.F.2007) ("[A] military judge commits [C]onstitutional

error by depriving an accused of his right to present a defense, [and] the test for prejudice on appellate review is whether the appellate court is able to declare a belief that it was harmless beyond a reasonable doubt.") (internal quotation marks omitted). The error, and appellant's assertions predicated upon it, must then

> be tested for prejudice under the standard of harmless beyond a reasonable doubt.... The inquiry for determining whether [C]onstitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.

*Dearing*, 63 M.J. at 482 (quoting *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006)) (first alteration in original); *see Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding that before a Constitutional error can be held harmless, an appellate court must find the error was "harmless beyond a reasonable doubt").

### Mistake–of–Fact Defense as Applied to Indecent Acts with a Child

An honest and reasonable mistake of fact regarding the victim's age has been recognized as a potential affirmative defense to a servicemember charged with committing the crime of indecent acts with a child. *Strode*, 43 M.J. at 33.

A mistake-of-fact defense may generally be raised where:

> [A]s a result of ... mistake, [the *accused* held] an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the *accused* would not be guilty of the offense. If the ... mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ... mistake need only have existed in the mind of the *accused*. If the ... mistake goes to any other element requiring only general intent or knowledge, the ... mistake must have existed in the mind of the *accused*[, i.e., must have been an *honest* mistake,] and must have been *reasonable* under all the circumstances.

R.C.M. 916(j)(1) (emphasis added). Applying this rule to the offense of indecent acts with a child, our superior court previously stated (as cited by the military judge in the instant case):

Mistake of fact is available to a military accused who is charged with committing indecent acts with a child under the age of 16 if he had an honest and reasonable belief as to the age of the person *and* if the acts would otherwise be lawful were the prosecutrix age 16 or older.

*Strode*, 43 M.J. at 33 (emphasis added).

█ The military judge noted he was adhering to "the [then] current case law" when he required satisfaction of both prongs of the conjunctive *Strode* test before instructing on a mistake-of-fact-as-to-age defense for indecent acts with a child; however, the law has changed. The mistake-of-fact-as-to-age defense no longer *requires examination of the second prong of the conjunctive test, i.e.*, indecency for reasons other than age. *United States v. Zachary*, 61 M.J. 813 (Army Ct.Crim.App.2005), *aff'd*, 63 M.J. 438 (C.A.A.F.2006). Because the victim's age is an element of the offense of indecent acts with a child, an honest and reasonable but mistaken belief as to the correct age of the child operates as a defense to that crime and merits a corresponding findings instruction. As we recently held: "[I]t is a defense to indecent acts with a child that, at the time of the act, the accused held an honest and reasonable belief that the person with whom the accused committed the indecent act was at least sixteen years of age." *Zachary*, 61 M.J. at 825; *see Zachary*, 63 M.J. at 439 (wherein our superior court reaffirms the "defense of mistake of fact is available to a military accused who is charged with committing indecent acts with a child").[4]

Indecent acts with a child is a general intent crime. *See Zachary*, 63 M.J. at 442 n. 20 (citing the "Army court's well-reasoned conclusion" in *Zachary*, 61 M.J. at 821). As such, the mistake-of-fact defense requires the accused's mistake to have been both honest and reasonable. *See* R.C.M. 916(j)(*l*). If raised by the evidence, the prosecution carries the burden of proving beyond a reasonable doubt that a mistake-of-fact defense does not exist. R.C.M. 916(b).

Our superior court also agreed with our court's conclusion in *Zachary* that:

Because the age of the victim remained a separate element of the charged offense of indecent acts with a child, mistake of fact remained a possible defense. We agree with the lower court that a mistake[-]of[-]fact defense is available as to the offense of indecent acts with a child regardless of whether other facts may establish indecency.

... [T]he minor status of the victim is an element of the offense of indecent acts with a child, not an aggravating factor.... [Therefore,] an honest and reasonable mistake[-]of[-]fact defense as to the victim's age under Article 134, UCMJ, does not fall away simply because the act is indecent for reasons other than the victim's minor status.

*Zachary*, 63 M.J. at 444 (citing *Zachary*, 61 M.J. at 824–25) (internal footnotes omitted).

## DISCUSSION

█ In light of our superior court's opinion in *Zachary*, we find the military judge properly instructed the panel on the mistake-of-fact defense regarding the carnal knowledge and attempted carnal knowledge offenses, but erred when he declined to instruct on mistake-of-fact for the offense of indecent acts with a child. However, based

---

4. Concluding that mistake-of-fact as to age is a defense to indecent acts with a child, despite other reasons for the indecency element, our superior court noted the "legal developments after *Strode*," and commented:

The [C]ongressional intent in codifying an affirmative defense in 10 U.S.C. § 920(d) was to modify the UCMJ "to conform to the spirit of the Sexual Abuse Act of 1986 (18 U.S.C. §§ 2241–2245)." S.Rep. No. 104–112, at 1

(1995). Under 18 U.S.C. § 2243, all sexual acts, sodomy, carnal knowledge, and indecent acts are grouped together. The mistake[-]of[-]fact defense is provided for all the sexual acts in this grouping. Thus, it follows that the defense of mistake of fact is available to the Article 134, UCMJ, offense of indecent acts with a child under sixteen.

*Zachary*, 63 M.J. at 443, n. 28.

on our application of the three-prong test in *Carruthers*, 64 M.J. at 346, we find any error resulting from the omission of this instruction harmless beyond a reasonable doubt.

■ The panel was properly instructed on the mistake-of-fact-as-to-age defense as it applied to the offenses of carnal knowledge and attempted carnal knowledge regarding Ms. CS.· The offenses of carnal knowledge and indecent acts with a child stemmed from the *identical sexual misconduct* on the *same occasion* between *appellant and the same victim;* appellant had "sexual intercourse with [Ms. CS, a female under sixteen years old,] in a hotel room while subordinate soldiers were present." [5] If the panel found the mistake-of-fact-as-to-age defense did not apply with respect to the carnal knowledge offense, then, *a fortiori*, it would have also found it did not apply with respect to the indecent acts with a child offense. The panel found appellant guilty of carnal knowledge; it follows that the panel must have also found: (1) appellant did not establish by a preponderance of the evidence the affirmative defense of mistake-of-fact as to age; and (2) the government proved beyond a reasonable doubt that Ms. CS was less than sixteen years old.

The members personally observed Ms. CS when she testified in court, and were also properly instructed to "weigh[ ] and evaluat[e] the evidence ... us[ing] ... common sense, and ... knowledge of human nature and the ways of the world," and "[i]n light of all the circumstances in the case, [to] ... consider the inherent probability or improbability of the evidence." Simply put, although the mistake-of-fact defense was not specifically covered regarding the offense of indecent acts with a child and therefore deprived appellant of the opportunity to raise the defense with respect to that particular crime, the panel had already rejected the defense regarding Ms. CS as applied to the offense of carnal knowledge.

Therefore, applying the three-prong test in *Carruthers* to the facts in this case, we find: (1) the requested instruction was legally correct; (2) the military judge erred by failing to give it; but nevertheless find (3) the result would have been the same had the military judge properly instructed the panel on mistake-of-fact as to age regarding indecent acts with a child. We conclude any error resulting from the omission of this instruction was harmless beyond a reasonable doubt because it "did not contribute to [appellant's] conviction or sentence." *Dearing*, 63 M.J. at 482.

Because we conclude the mistake-of-fact-defense instructional error was harmless beyond a reasonable doubt, we need not consider affirming a finding of guilty to the lesser-included offense of indecent acts with another. *See United States v. Wells*, 52 M.J. 126, 131–32 (C.A.A.F.1999) (reversing conviction for premeditated murder, but authorizing lower court to affirm guilty finding to lesser-included offense of voluntary manslaughter). However, the record of trial is replete with evidence supporting such a finding of guilty, if that alternative disposition becomes necessary. *See also United States v. McKinley*, 27 M.J. 78, 79 (C.M.A.1988) ("[A]n appellate court ... may substitute a lesser-included offense for the disapproved findings. This is true even if the lesser-included offense was neither considered nor instructed upon at the trial of the case.").

Even if we were to grant the requested relief of affirming the lesser-included offense of indecent acts with another, we would not grant the requested sentence rehearing. We can "reliably determine what sentence would have been imposed at the trial level if the error[s] had not occurred." *United States v. Sales*, 22 M.J. 305, 307 (C.M.A.1986). In *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F.2006), our superior court reaffirmed the standard for sentence reassessment. " 'Thus, if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a

5. The open and notorious nature of the sexual activity constituting indecency was alleged in the offense of indecent acts with another regarding Ms. AB, the victim who was 16 years old or older. There was more than one basis for finding appellant's conduct with both victims inde-

cent. In addition to the charged element of indecency (predicated upon the presence of appellant's subordinates during the sexual activity at issue), there was tremendous disparity in age between appellant and the two teenage victims.

certain severity, [then] a sentence of that severity or less will be free of the prejudicial effects of error....'" *Id.* at 41 (quoting *Sales*, 22 M.J. at 308).

The military judge cured any adverse effect on sentencing when he instructed the panel that the maximum sentence to confinement was twenty-seven years, a figure which reflects his sentence relief. Affirming the lesser-included offense of indecent acts with another at the appellate level would have no effect on the sentence we would approve because the two-year decrease in the maximum punishment was already wholly absorbed by the trial judge's seven-year reduction in the maximum sentence.[6] The panel sentenced appellant to a bad-conduct discharge, confinement for twenty-four months, forfeiture of all pay and allowances, reduction to Private E1, and a reprimand—a sentence well below the authorized maximum punishment that includes a dishonorable discharge and confinement for twenty-seven years. We are, therefore, confident appellant would have received the same sentence had he originally been convicted of committing indecent acts with an adult female under the same circumstances. If we were to reassess the sentence on the basis of the errors noted, the entire record, and applying the principles in *Moffeit*, 63 M.J. at 40, and Sales, 22 M.J. at 305, we would affirm the sentence.

## CONCLUSION

We have considered the remaining assignment of error, and those matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge MAHER and Judge SULLIVAN concur.

---

6. The maximum punishment for indecent acts with a child includes confinement for seven years, *Manual for Courts–Martial, United States* (2002 ed.) [hereinafter *MCM*], Part IV, para. 87e, while the maximum punishment for indecent acts with another includes confinement for five years. *MCM*, Part IV, para. 90e.