UNITED STATES, Appellee

v.

Kim H. CARRUTHERS, Staff Sergeant
U.S. Army, Appellant

No. 06-0050

Crim. App. No. 20010700

United States Court of Appeals for the Armed Forces

Argued November 29, 2006

Decided January 31, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.

STUCKY and RYAN, JJ., did not participate.

Counsel

For Appellant:  Captain Kathleena R. Scarpato (argued);
Lieutenant Colonel Steven C. Henricks, Lieutenant Colonel
Kirsten V. C. Brunson, Major Billy B. Ruhling II, and Captain
Amy S. Fitzgibbons (on brief); Captain Doug J. Choi.

For Appellee:  Captain W. Todd Kuchenthal (argued); Colonel John
W. Miller II, Lieutenant Colonel Michele B. Shields, and Major
Tami L. Dillahunt (on brief); Lieutenant Colonel Mary M. Foreman
and Captain Edward E. Wiggers.

Military Judges:  Patrick J. Parrish (arraignment) and Jeffrey
D. Smith (trial).

**This opinion is subject to revision before final publication.**

United States v. Carruthers, No. 06-0050/AR

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Kim H. Carruthers was charged with one specification of conspiracy and multiple specifications of larceny of military property in violation of Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921 (2000).  Carruthers entered pleas of not guilty to the charges but was convicted by a general court-martial composed of officer and enlisted members.  He was sentenced to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.  The sentence was approved by the convening authority and the United States Army Court of Criminal Appeals affirmed the findings and sentence in an unpublished per curiam opinion.  United States v. Carruthers, No. ARMY 20010700 (A. Ct. Crim. App. Sept. 20, 2005).

The Sixth Amendment guarantees an accused's right "to be confronted with the witnesses against him."  U.S. Const. amend. VI; see also Douglas v. Alabama, 380 U.S. 415, 418 (1965); United States v. McGrath, 39 M.J. 158, 161-62 (C.M.A. 1994).  An important function of this constitutionally protected right is to provide the defense an opportunity to expose the possible interests, motives, and biases of prosecution witnesses.  Davis v. Alaska, 415 U.S. 308, 316 (1974); Military Rules of Evidence (M.R.E.) 608(c).

2

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); United States v. James, 61 M.J. 132, 134-35 (C.A.A.F. 2005); M.R.E. 403. The military judge may restrict cross-examination when the probative value of the evidence sought would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members." M.R.E. 403.

We granted review in this case to determine whether Carruthers was denied his Sixth Amendment right to confrontation when the military judge limited cross-examination of a key Government witness regarding the possible sentence under the witness's plea agreement.[1] We also granted review to determine

---

[1] In Issue I we granted review of the following:

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION WHEN THE MILITARY JUDGE IMPERMISSIBLY RESTRICTED CROSS-EXAMINATION OF A KEY GOVERNMENT WITNESS REGARDING THE DETAILS OF A CO-CONSPIRATOR'S EXTREMELY FAVORABLE PLEA AGREEMENT.

64 M.J. 76 (C.A.A.F. 2006).

<u>United States v. Carruthers</u>, No. 06-0050/AR

whether the military judge erred by failing to issue a leniency instruction to the members as requested by the defense.[2]

BACKGROUND

During a three-year period while stationed at Fort Bragg, North Carolina, Carruthers stole over one million dollars worth of military property from the Defense Reutilization and Marketing Office (DRMO), including trucks, all-terrain vehicles, vehicle parts, clothing, electronic equipment, and other items. Carruthers used forged requisition orders purporting to request supplies for his unit to obtain access to the DRMO from which he transported stolen property to an off-base storage facility. He also sold and gave items he had stolen to civilians and military personnel, including his coconspirators. Further facts relevant to each issue will be set forth below.

Cross-Examination of Sergeant First Class (SFC) Rafferty

Background

At trial, one of Carruthers' coconspirators, SFC Paul Rafferty, testified for the Government. Rafferty had entered a pretrial agreement to plead guilty in federal district court to one count of larceny of over $1,000 of government property. At

---

[2] In Issue II we granted review of the following:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY REFUSING TO GIVE A MANDATORY LENIENCY INSTRUCTION.

<u>Id.</u>

4

the time of Carruthers' court-martial, Rafferty had not yet been charged by federal officials.  Carruthers' civilian defense counsel (CDC) cross-examined Rafferty extensively about the terms and effect of this pretrial agreement:

> [CDC]:  You knew, by not going to a court-martial, that you wouldn't be subjected to a punitive discharge which is -- could cost you your career and your retirement; isn't that right?
>
> [Rafferty]:  Yes, sir.
>
> [CDC]:  Do you also know that, if and when you are convicted by the federal authorities, that you could still be administratively discharged and receive an other than honorable discharge?  Do you realize that?
>
> [Rafferty]:  Yes, sir.
>
> [CDC]:  But the government hasn't processed you for an administrative discharge, have they?
>
> [Rafferty]:  No, sir.
>
> [CDC]:  You don't know whether they're intending to do that either, do you?
>
> [Rafferty]:  No, sir.
>
> [CDC]:  In fact, that hasn't been discussed, has it?
>
> [Rafferty]:  No, sir.
>
> [CDC]:  In fact, wouldn't you agree that a lot of what happens with you after this court-martial could depend on your testimony at trial?
>
> [Rafferty]:  Yes, sir.
>
> [CDC]:  If you do a good job for the government, they're going to help take care of you; isn't that right?
>
> [Rafferty]:  Yes, sir.
>
>         . . . .

[CDC]: Now isn't it true that, in the plea agreement, it says that, "if the defendant provides false, incomplete or misleading information or testimony, that would constitute a breach of this agreement by the defendant, and the defendant shall be subject to prosecution for any federal criminal violation. Any information provided by the defendant may be used against the defendant in such prosecution"? Isn't it true that, if for some reason there's an indication that you don't provide accurate information here at court, that this plea agreement can be revoked? Isn't that right?

[Rafferty]: Yes, sir.

[CDC]: Wouldn't it be real important for you to testify today consistently with how you told investigators all this happened? Would you agree with that?

[Rafferty]: Yes, sir.

[CDC]: 'Cause, if you didn't, then certainly it could be indicated that you were providing some false or misleading information; isn't that right?

[Rafferty]: Yes, sir.

        . . . .

[CDC]: One count of theft of public property over $1,000, and that's it?

[Rafferty]: Yes, sir.

[CDC]: One count -- your understanding is that you're going to be charged with one count, even though -- well, let me ask you, how many times would you say you actually took possession of property from DRMO with the intent to steal? How many times did you do that and walk away from DRMO?

[Rafferty]: I couldn't even remember the count, sir. A lot.

[CDC]: A lot, correct?

[Rafferty]: Yes, sir.

[CDC]: In fact, you understand, don't you, there's a good possibility that you may just get some suspended ----

6

[Trial Counsel]:  Objection.

In an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), session with the military judge, the Government objected to the defense's questions about Rafferty's potential sentence as being improper for the panel to consider before a finding of guilt. Defense counsel responded that testimony about Rafferty's potential maximum punishment would be important to show his motive for testifying and that if he could not be cross-examined on this point, the agreement itself should be entered into evidence. The defense counsel did not, however, explain what special significance the maximum punishment in the plea agreement had in motivating the witness's testimony as compared to other aspects of the pretrial negotiation. The military judge sustained the objection and did not permit further questions or other evidence as to the specifics of the plea agreement, stating:

> I feel that it's just not relevant; and, even if it is, I find, under [M.R.E.] 403, the probative value is substantially outweighed by the danger of misleading the members. That said, counsel, if you want to go back and find some case law on this point that indicates that -- specific to the plea bargain, that has not already been brought out -- should go before the members, then please bring that to my attention; and, if you can point to me some case law on point, then I'll allow you to recall Sergeant First Class Rafferty and bring that out. At this point, to me, you've made your point, Mr. Dunn, that Sergeant First Class Rafferty has a plea bargain with the US Attorney's Office, which means that he will be tried in US District Court, not at a court-martial; that he would not be subject to the potential penalty of a punitive discharge. I think that point has clearly been made. I

think that's really what you're driving at. You're driving at the different potential penalties. From what I hear you saying and my view of the way you've approached this is to try to point out and to lay the foundation so that, if we do get to sentencing, that issue of a punitive discharge is obviously very important to you and to Staff Sergeant Carruthers.

The military judge asked if there were further questions or objections and hearing none, recalled the members. Under further cross-examination Rafferty again confirmed that his own treatment by the Government could depend on his performance as a witness against Carruthers and that the Army had not yet taken any adverse administrative action against him.

## Discussion

Carruthers argues that the defense should have been permitted to bring to light the sentencing details of Rafferty's pretrial agreement because the possibility Rafferty would receive a substantially reduced sentence in exchange for his cooperation with the Government provided "a clear motive to lie." Carruthers disputes the military judge's conclusion that testimony about Rafferty's possible sentence was irrelevant and argues that the military judge's second ground for exclusion -- the danger that the evidence would mislead the members -- could have been remedied by a curative instruction.

The Government responds that defense counsel had already elicited many details of the plea bargain from Rafferty, including that he was not facing a court-martial, that he was

doing everything he could to avoid a punitive discharge, and that the leniency he expected to receive depended on his performance as a witness against Carruthers.

In James, 61 M.J. at 134, this court reiterated its adherence to the standard set forth by the Supreme Court in Van Arsdall for evaluating a trial judge's limitation of inquiry into potential bias on cross-examination:

> [W]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

Id. at 134-35 (citing Van Arsdall, 475 U.S. at 678-79) (citation and quotation marks omitted).

In light of this "wide latitude," a military judge's decision to limit cross-examination as to the sentencing details of a prosecution witness's plea agreement is reviewed for abuse of discretion. Id. at 136; United States v. Jones, 49 M.J. 85, 88 (C.A.A.F. 1998). However, this court has held that the military judge's discretionary authority arises only after "'there has been permitted as a matter of right sufficient

9

United States v. Carruthers, No. 06-0050/AR

cross-examination.'"  Jones, 49 M.J. at 188 (quoting United

States v. Lindstrom, 698 F.2d 1154, 1160 (11th Cir. 1983)).

    Defense counsel engaged Rafferty in a lengthy cross-examination, during which he admitted:  (1) that his plea agreement could get him out of a court-martial and punitive discharge; (2) that the Government would "take care of him" if he were to "do a good job" at trial; (3) that his story at trial would have to be consistent with what he told investigators; and (4) that he would only be charged with one count of larceny in federal district court despite having stolen property on "a lot" of occasions.  We conclude that the military judge permitted sufficient cross-examination of Rafferty.

    Having permitted defense counsel's cross-examination to bring to light Rafferty's possible motive to testify falsely, the military judge then properly conducted an M.R.E. 403 balancing test on the record.  He was not persuaded that the sentencing details of the pretrial agreement had any special relevance to Rafferty's motive in testifying beyond that already elicited.  He concluded that even if the terms of the pretrial agreement were relevant, the probative value of further inquiry into Rafferty's possible sentence under the plea agreement was substantially outweighed by the possibility that such testimony would mislead the members.  We defer to the military judge's on-

record application of M.R.E. 403 to the facts of this case. United States v. James, 63 M.J. 217, 222 (C.A.A.F. 2006).

The military judge did not deny the defense the right to examine the possibility of bias, but rather simply limited its ability to inquire about yet another aspect of the plea agreement, when the agreement's bearing on bias had already been thoroughly explored.  As we held in James, "once the defendant has been allowed to expose a witness's motivation in testifying, 'it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury.'"  61 M.J. at 136 (quoting United States v. Nelson, 39 F.3d 705, 708 (7th Cir. 1994)).  Here, the military judge correctly determined that defense counsel's cross-examination had brought to light Rafferty's possible motive to lie, such that further inquiry into his sentence would have been marginally relevant at best and potentially misleading.  Since "sufficient cross-examination" had been permitted and the military judge properly identified and weighed the danger of misleading the members under M.R.E. 403, we find no abuse of discretion and need not reach the question of prejudice.

## Leniency Instruction

### Background

During an Article 39(a), UCMJ, session prior to instructing the members, the military judge explained his proposed findings

instructions to the parties and asked whether there were any objections or proposed modifications from the parties.  The defense did not object to the military judge's proposed accomplice instruction and stated that it had no other issues with the proposed instructions.  Later, however, the defense submitted a request for the following tailored leniency instruction:

> TESTIMONY OF A WITNESS WITH A REDUCED SENTENCE
>
> There is evidence and indeed it is not in dispute and all the evidence shows that SFC Paul Rafferty and Robert Nunes testified under an agreement with the Government to give truthful testimony in any proceeding when requested by the government in order to have their charges and sentences reduced.  It is uncontroverted that SFC Paul Rafferty and Robert Nunes testified in whole or in part for this reason.  You should therefore examine SFC Paul Rafferty's and Robert Nunes's testimony with great care and caution in deciding whether or not to believe it.  If, after doing so, you believe their testimony, in whole or in part, you should treat what you believe the same as any other believable evidence.

The military judge declined to give this instruction, stating he believed "the standard benchbook instruction is adequate."  He issued the following instruction dealing with the testimony of Carruthers' alleged accomplices:

> A witness is an accomplice if he was criminally involved in an offense with which the accused is charged. The purpose of this advice is to call to your attention a factor specifically affecting the witness' believability; that is, a motive to falsify his testimony in whole or in part, because of an obvious self-interest under the circumstances.
>
> For example, an accomplice may be motivated to falsify testimony in whole or in part because of his own self-

12

interest in receiving immunity from prosecution or leniency in a forthcoming prosecution.

The testimony of an accomplice, even though it may be corroborated and apparently credible, is of questionable integrity and should be considered by you with great caution.

In deciding the believability of Sergeant First Class Paul Rafferty, Mr. Grandy Hooper, Mr. Bob Nunes, Mr. Paul Morgan, and Mr. Jerry Roach, you should consider all the relevant evidence in this case and the extent to which their respective testimony is either corroborated or contradicted by other evidence in this case.

Whether Sergeant First Class Rafferty, Mr. Hooper, Mr. Nunes, Mr. Morgan and/or Mr. Roach were accomplices is a question for you to decide. If those individuals shared the criminal intent or purpose of the accused, if any, or aided, encouraged, or in any other way criminally associated or involved themselves with the offenses with which the accused is charged, they would be an accomplice whose testimony must be considered with great caution.

This instruction is substantially similar to the "Accomplice Testimony" sample instruction in the Dep't of the Army, Pamphlet 27-9, Legal Services, Military Judges' Benchbook ch. 7, para. 7-10 (2000) [hereinafter Benchbook]. The Benchbook contains another sample instruction on "witness[es] testifying under a grant of immunity or promise of leniency," but the military judge did not issue that instruction. Benchbook ch. 7, para. 7-19.

## Discussion

"While counsel may request specific instructions from the military judge, the judge has substantial discretionary power in deciding on the instructions to give." United States v.

United States v. Carruthers, No. 06-0050/AR

Damatta-Olivera, 37 M.J. 474, 478 (C.M.A. 1993) (citing United

States v. Smith, 34 M.J. 200 (C.M.A. 1992)); Rules for Courts-

Martial 920(c) Discussion.  Thus the military judge's denial of

a requested instruction is reviewed for abuse of discretion.

Damatta-Olivera, 37 M.J. at 478; United States v. Rasnick, 58

M.J. 9, 10 (C.A.A.F. 2003).  "We apply a three-pronged test to

determine whether the failure to give a requested instruction is

error: '(1) [the requested instruction] is correct; (2) it is

not substantially covered in the main [instruction]; and (3) it

is on such a vital point in the case that the failure to give it

deprived [the accused] of a defense or seriously impaired its

effective presentation.'"  United States v. Gibson, 58 M.J. 1, 7

(C.A.A.F. 2003) (quoting Damatta-Olivera, 37 M.J. at 478)

(citation and quotation marks omitted).

    Carruthers argues that the defense requested leniency

instruction should have been issued under Gibson, but even if

the military judge was right to deny it, he should have issued

another instruction on leniency in addition to the accomplice

instruction that was given.  That instruction could either have

been a modified version of the defense requested instruction or

the "standard instruction" on leniency from the Benchbook ch. 7,

para. 7-19.  Carruthers maintains that the military judge

promised to give the Benchbook leniency instruction when he

stated that he found that "the standard benchbook instruction is

14

adequate." The Government responds that the defense requested instruction does not meet any of the three Gibson requirements.

Applying the first Gibson requirement to the facts of this case, we observe that the overall thrust of the defense requested instruction was correct. The two witnesses mentioned, Rafferty and coconspirator Robert Nunes, did testify in exchange for "deals" with the Government. Nonetheless, as Carruthers concedes, the wording of the defense requested instruction was "substantially more favorable to the defense" than the sample leniency instructions in the Benchbook. While the military judge could have modified this instruction to bring it in line with the sample instructions' more neutral tone, he was not required to do so.

Under the second Gibson requirement, we must determine whether the proffered leniency instruction was "substantially covered" in the military judge's instruction on accomplice testimony. The instruction given by the military judge identified Rafferty and Nunes along with three other witnesses and instructed the members to consider all relevant evidence to decide whether they were accomplices, and to accordingly evaluate their credibility. Describing accomplice testimony, the instruction called the panel's attention to "a factor specifically affecting the witness' believability; that is, a motive to falsify his testimony in whole or in part, because of

15

an obvious self-interest under the circumstances." The
instruction also stated that the accomplices' interests may
include "receiving immunity from prosecution or leniency in a
forthcoming prosecution," and that their testimony, "even though
it may be corroborated and apparently credible, is of
questionable integrity and should be considered by you with
great caution."

In Damatta-Olivera, this court found "substantial coverage"
when a military judge's instructions on accomplice testimony
"adequately addressed" the accomplice's credibility, which was
the issue underlying the defense's requested instruction. 37
M.J. at 487-79. Similarily, in United States v. Poole, 47 M.J.
17, 19 (C.A.A.F. 1997), we found that a military judge's
instruction on resistance to apprehension, which named
aggravated assault as a lesser included offense, "substantially
covered" the defense requested instruction on "mere flight,"
even though it did not mention "mere flight" as a defense.

We hold that the instructions in this case "substantially
covered" the leniency offered Rafferty and Nunes and addressed
their possible motives to lie as a result of their favorable
pretrial agreements. Although it would have been better to give
the Benchbook leniency instruction once the issue was raised,
the military judge did not err because the instruction he gave

16

covered its "critical principles." United States v. Bigelow, 57 M.J. 64, 67-68 (C.A.A.F. 2002).

Moreover, Carruthers' claim that the military judge agreed to issue the "standard instruction" on leniency mischaracterizes the record. The defense was given the opportunity to review the military judge's planned instructions, which included neither the defense requested instruction nor the Benchbook leniency instruction, and did not object. See United States v. Gay, 16 M.J. 475, 477-78 (C.M.A. 1983) (holding that military judge's instruction on reasonable doubt "substantially covered" defense requested instruction when defense did not object or request additional instruction). Later, after the defense submitted its requested instruction, the military judge stated that while he had considered it, he believed "the standard benchbook instruction is adequate." Given that the instruction he actually issued was substantially similar to the sample instruction on accomplice testimony from the Benchbook ch. 7, para. 7-10, there is no reason to believe the military judge was referring to an instruction other than the one he actually gave. The Benchbook leniency instruction was neither requested by the defense nor mentioned by the military judge as an instruction he was considering. Carruthers' contention that the military judge had agreed to issue the Benchbook leniency instruction lacks support in the record.

United States v. Carruthers, No. 06-0050/AR

Finally, applying the third Gibson requirement, we find that without the requested instruction Carruthers was neither deprived of a defense nor seriously impaired in his ability to present a defense. Defense counsel's cross-examination of Rafferty clearly elicited his possible bias. It revealed Rafferty's interest in avoiding a court-martial and punitive discharge, his desire to "do a good job" at trial so the Government would "take care of [him]," including his motive to testify consistently with what he told investigators, and the fact that he would only be charged with one count of larceny in federal district court despite having stolen property on "a lot" of occasions.

Likewise, Nunes testified that he had not yet been charged, that he had avoided "adverse administrative action," and that he was testifying against Carruthers "in exchange for leniency in federal court," which "would give [him] ample reason to cooperate with the government." After the military judge instructed the members on the strong motive of accomplices to lie when testifying in exchange for deals with the prosecution, the defense argued in its closing that the evidence provided by Rafferty and Nunes was not credible precisely because they were getting a "deal" for "lenient treatment." The defense was not denied the ability to attack the credibility of prosecution witnesses testifying in exchange for leniency.

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.