# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39340**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Daniel J. POSTELL**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 February 2019

————————————

*Military Judge:* Christina M. Jimenez.

*Approved sentence:* Bad-conduct discharge and reduction to E-4. Sentence adjudged 29 June 2017 by GCM convened at Joint Base Pearl Harbor-Hickam, Hawaii.

*For Appellant:* Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and POSCH, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge HUYGEN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

POSCH, Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty of attempted sexual abuse of a child by indecent communication, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10

U.S.C. § 880.[1] Appellant was sentenced to a bad-conduct discharge and reduction to the grade of E-4. The convening authority approved the adjudged sentence.

Appellant raises one issue on appeal: whether the military judge abused her discretion by not giving the members an instruction that defined "indecent language" as requested by the Defense. We find no error and affirm the findings and sentence.

## I. BACKGROUND

In November 2016, Appellant was reassigned to Joint Base Pearl Harbor-Hickam (JBPHH), Hawaii, and discovered a personal advertisement on the Internet entitled "New to base – w4m[2] (JBPHH)." The ad read, in part, "I just moved here and I am looking for some military guys to show me around the area. . . . Maybe you could show me a secluded beach somewhere where we could have some fun." Appellant replied to the ad and began communicating with "Emily," who told Appellant she was a 14-year-old dependent child of a military family new to JBPHH and living in the on-base lodging facility. Unbeknownst to Appellant, "Emily" was an agent of the Air Force Office of Special Investigations (AFOSI) posing as a child as part of an undercover operation to identify servicemembers seeking to have sex with children.

For two days Appellant exchanged emails and other written messages with "Emily." Appellant asked, "Are you into married men?" "Emily" responded that she had "no problem with married men" and that she "kn[e]w how to keep things a secret." Appellant sent "Emily" a photo of himself standing in front of a bathroom mirror, shirtless, and wearing low-waist athletic shorts covering his groin. In response, "Emily" sent Appellant an image of a female adult that had been digitally manipulated to make her appear younger. "Emily" told Appellant, "I hope you like what you see. I am about to turn 15 but I have done this before and I know how to keep a secret." Appellant replied, "[Y]ou[']r[e] super cute[.] [S]end some more pics please." Appellant sought proof that "Emily" was not a "cop" and repeatedly asked her to send him a "naked picture." The agent responded by sending Appellant a file purporting to be a naked picture of "Emily" but incapable of being viewed.

In the afternoon of the first full day of their communication, Appellant discussed meeting "Emily" after her parents left for work the next day. Appellant asked, "Do you want a quickie at your place?" Appellant said that he liked

---

[1] Appellant was acquitted of a separate specification of attempted sexual assault of a child in violation of Article 80, UCMJ.

[2] The abbreviation "w4m" is generally understood to refer to "woman looking for man."

"[g]iving oral or receiving [oral sex]" and asked, "[H]ave you gotten off before[?]" Appellant told "Emily" he "like[d] to give it rough if you like that," he "would love to become a f**k buddy," and "[i]t's ok" if she would "still seek other guys." Appellant told her he had bought condoms and would be in uniform when they met.

The next morning Appellant indicated he was excited about their planned sexual encounter, telling "Emily" that he "hope[d] this won't be the only time we do this." He elaborated he would "try to be really good for" her, "maybe we can go more than once," and he would bring three condoms. "Emily" gave Appellant directions to her lodging room and confirmed her parents would be gone when he arrived. After Appellant knocked on the door of her room, he was apprehended by AFOSI agents. A search of Appellant revealed three condoms in his pants pocket.

## II. DISCUSSION

Appellant asserts that the military judge abused her discretion by not giving the members an instruction that defined "indecent language" as requested by the Defense. We conclude the military judge did not abuse her discretion.

### A. Additional Background and Defense-Requested Instruction

Appellant was charged with attempted sexual abuse of a child by indecent communication in violation of Article 80, UCMJ. Because Appellant was charged with an offense of attempt, the Government was required to prove beyond a reasonable doubt that Appellant intended to commit every element of the offense of sexual abuse of a child under Article 120b, UCMJ, 10 U.S.C. § 920b, including *inter alia* that Appellant intended to commit a lewd act upon a child by communicating sexually explicit language to gratify Appellant's sexual desire.[3] *See* Article 80(a), UCMJ, 10 U.S.C. § 80(a) ("An act done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.").

---

[3] The elements of the underlying charged offense of sexual abuse of a child by indecent communication are: (1) that Appellant committed a lewd act upon "Emily," by communicating sexually explicit language to "Emily" to gratify Appellant's own sexual desire and (2) that, at the time, "Emily" had not attained the age of 16 years. *See Manual for Courts-Martial, United States* (2016 ed.)*,* pt. IV, ¶ 45b.b.(4)(d). The specification alleged the communication of "sexually explicit" language vice "indecent language" and did not further describe the language Appellant communicated to "Emily."

Before the members began deliberations, the military judge instructed them that "'[l]ewd act' means intentionally communicating *indecent language* to a child by any means, including via any communication technology, with an intent to abuse, humiliate or degrade any person, or to arouse or gratify the sexual desires of any person." (Emphasis added). This instruction was taken verbatim from the definition of "lewd act" in Article 120b(h)(5)(C), UCMJ, and the *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27–9 at 624–25 (10 Sep. 2014).

However, the military judge declined to define "indecent language" and give a Defense-requested instruction from a selected portion of the definition of "indecent language," as it appears in the explanation to the Article 134, UCMJ, 10 U.S.C. § 934, offense of communicating indecent language. *See Manual for Courts-Martial, United States* (2016 ed.) *(MCM)*, pt. IV, ¶ 89.c. The proposed instruction would have defined "indecent language" as "that which is grossly offensive to modesty, decency or propriety or shocks the moral sense because of its vulgar, filthy or disgusting nature or its tendency to incite lustful thought. The language must violate community standards." As requested, the definition left out, "Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts." *Id.*; *see also Benchbook*, at 870. The military judge explained to counsel that she declined to give the Defense-requested instruction because the requested definition of "indecent language" was for "a[n Article] 134 offense, rather than [an offense] under [Article] 120b and the charge isn't [communicating] indecent language. The charge is a lewd act."

**B. Law**

Whether a military judge appropriately instructed a court-martial panel is a question of law we review de novo. *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (quoting *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F 2011)). "The military judge has an independent duty to determine and deliver appropriate instructions." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Westmoreland*, 31 M.J. 160, 163–64 (C.M.A. 1990)). While trial defense counsel may request specific instructions from the military judge, the judge has substantial discretionary power in deciding on the instruction to give. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citing Rule for Courts-Martial 920(c), Discussion; *United States v. Smith*, 34 M.J. 200 (C.M.A. 1992)).

Denial of a defense-requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 345–46 (C.A.A.F. 2007) (citing *United States v. Rasnick*, 58 M.J. 9, 10 (C.A.A.F. 2003); *Damatta-Olivera*, 37 M.J. at 478). The United States Court of Appeals for the Armed Forces (CAAF) applies a three-prong test to evaluate whether the failure to give a requested

instruction is error: "(1) [the requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [Appellant] of a defense or seriously impaired its effective presentation." *Carruthers*, 64 M.J. at 346 (first and second alteration in original) (quoting *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003)). All three prongs of the *Carruthers* test must be satisfied for this court to find error. *United States v. Barnett*, 71 M.J. 248, 253 (C.A.A.F. 2012).

## C. Analysis

We consider if the Defense-requested instruction meets each of the three prongs of the *Carruthers* test and find that it meets none of them.

### 1. First *Carruthers* Prong

We first address whether the proposed instruction was a correct statement of the law and find that it was not. In all respects but one, trial defense counsel's requested instruction was identical to the definition of "indecent language" contained in the offense of communicating indecent language, Article 134, UCMJ, except for the omission of the sentence, "Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts." *MCM*, pt. IV, ¶ 89.c. The CAAF has explained that this sentence operates to "modify and further explain" the two sentences from the definition of "indecent language" that the Defense did request. *United States v. Green*, 68 M.J. 266, 269 (C.A.A.F. 2010). Because of this omission, the Defense-requested instruction was an incomplete statement of the law and thus incorrect.

### 2. Second *Carruthers* Prong

On the second *Carruthers* prong, we find that the Defense-requested instruction was substantially covered by the instructions on the elements and definitions of the charged offense given to the members by the military judge. Appellant argued at trial and again on appeal that without the requested instruction the factfinder could not determine whether the sexually explicit language that the Government charged crossed the legal threshold for indecent language. Put another way, Appellant argues that the requested instruction was necessary because the elements and definitions of Article 120b, UCMJ, were inadequate to separate wrongful conduct from innocent speech. We disagree.

Appellant's proposed instruction was substantially covered by the military judge's instruction on the elements of the offense because, as the judge instructed, the Government had to prove beyond a reasonable doubt that Appellant intended to commit a lewd act by communicating indecent language to a child with the intent to gratify his sexual desire. *See MCM,* pt. IV, ¶

45b.b.(4)(d). The Government had to prove not only that Appellant uttered indecent speech but also that Appellant communicated language to a child with the specific intent to gratify Appellant's sexual desire. The Defense-requested instruction was unnecessary because the elements of the offense of sexual abuse of a child by indecent communication and the definition of "lewd act" were adequate for the members to separate wrongful conduct from innocent speech. Thus, we find that the Defense-requested instruction was substantially covered by the instruction on the elements and definitions of the offense Appellant was charged with attempting to commit.

### 3. Third *Carruthers* Prong

On the third *Carruthers* prong, we find the requested instruction did not cover such a vital point in the case that the failure to give it either deprived Appellant of a defense or seriously impaired the effective presentation of a defense. The Government was required to prove that Appellant intended to commit every element of the offense of sexual abuse of a child, including *inter alia* that Appellant intended to commit a lewd act upon a child by communicating indecent language to that child by any means. *See MCM,* pt. IV, ¶ 45b.b.(4)(d). Although the Defense at trial focused on entrapment and mistake of fact as to age, the Defense also challenged whether the Government met its burden of proof and in argument asked rhetorically, "What's the definition of 'indecent language?' What's indecent?" The Defense answered these questions by calling on the members to consider Appellant's language in the context of "the community that we have" and arguing "[t]here's worse language on the radio" than in the messages Appellant sent to "Emily."

We find the Defense, even without the requested instruction, was not denied the ability to challenge the Government's proof that the language Appellant communicated to "Emily" was indecent. Consequently, the military judge's decision not to give the Defense-requested instruction neither deprived Appellant of a defense nor seriously impaired the effective presentation of a defense. Thus, we conclude that the military judge did not abuse her discretion when she declined to give the Defense-requested instruction defining the term "indecent language."

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court