# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

**No. ACM 39825 (rem)**

————————

**UNITED STATES**
*Appellee*

**v.**

**Sean W. HARRINGTON**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 3 May 2024

————————

*Military Judge*: Christopher M. Schumann.

*Sentence*: Sentence adjudged 1 July 2019 by GCM convened at Cannon Air Force Base, New Mexico. Sentence entered by military judge on 30 July 2019: Dishonorable discharge, confinement for 14 years, and reduction to E-1.

*For Appellant*: Major Matthew L. Blyth, USAF; Major M. Dedra Campbell, USAF.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Major Vanessa Bairos, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and DOUGLAS, *Appellate Military Judges*.

Senior Judge CADOTTE delivered the opinion of the court, in which Judge DOUGLAS joined. Senior Judge RICHARDSON filed a separate concurring opinion.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————

CADOTTE, Senior Judge:

Contrary to Appellant's pleas, a general court-martial composed of officer members convicted Appellant of one specification of involuntary manslaughter and one specification of communicating a threat in violation of Articles 119 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 919, 934, *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*).[*] Also, Appellant was found guilty, consistent with his pleas, of one specification of divers use of cocaine and one specification of divers use of marijuana, both in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, *Manual for Courts-Martial, United States* (2012 ed.). Appellant was sentenced to a dishonorable discharge, confinement for 14 years, and reduction to the grade of E-1.

After this court affirmed the findings and sentence, *United States v. Harrington*, No. ACM 39825, 2021 CCA LEXIS 524 (A.F. Ct. Crim. App. 14 Oct. 2021) (unpub. op.), the United States Court of Appeals for the Armed Forces (CAAF) granted Appellant's petition for review of three issues. *United States v. Harrington*, 82 M.J. 267 (C.A.A.F. 2022) (order). Ultimately, the CAAF found in Appellant's favor on two of those issues: (1) "whether the military judge abused his discretion by denying Appellant's request to instruct the panel members on the maximum punishment available for each of Appellant's offenses of conviction," and (2) "whether the military judge abused his discretion in allowing the Government trial counsel to participate in the delivery of the unsworn statement of the homicide victim's parents." *United States v. Harrington*, 83 M.J. 408, 412 (C.A.A.F. 2023). The CAAF affirmed the findings but reversed the sentence, returning the case to The Judge Advocate General for remand to this court to "either reassess the sentence based on the affirmed findings or order a sentence rehearing." *Id.* at 423.

On remand, Appellant urges this court to order a rehearing on sentence. In contrast, the Government states the court "can conduct a sentence reassessment and reassess the sentence to the same [ ] sentence adjudged at trial" and requests we "reassess Appellant's sentence, and affirm the reassessed 14-year term of confinement."

## I. LAW AND ANALYSIS

Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), a court-martial sentence may not be held incorrect by virtue of legal error "unless the error materially

---

[*] All charged offenses in this case occurred prior to 1 January 2019, and were preferred and referred to court-martial after that date. Unless otherwise noted, all references in this opinion to the non-punitive articles of the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

prejudices the substantial rights of the accused." If we can conclude that absent any error, an adjudged sentence would have been at least a certain severity, "then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a)[, UCMJ,] will be met." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

We have broad discretion first to decide whether to reassess a sentence, and then to arrive at a reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). In deciding whether to reassess a sentence or return a case for a rehearing, we consider the totality of the circumstances, and the following illustrative factors announced in *Winckelmann*: (1) "Dramatic changes in the penalty landscape and exposure;" (2) "Whether an appellant chose sentencing by members or a military judge alone;" (3) "Whether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "Whether the remaining offenses are of the type that judges of the [C]ourts of [C]riminal [A]ppeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Id.* at 15–16 (citations omitted).

We may reassess a sentence only if we are able to reliably determine that, absent the error, the sentence would have been "at least of a certain magnitude." *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citation omitted). Having considered the totality of the circumstances, including the *Winckelmann* factors, we are not convinced that we can reliably make such a determination. In view of the CAAF's conclusions that the military judge misapprehended the law and allowed erroneous presentation of victim matters, "the only fair course of action is to have [Appellant] resentenced at the trial level." *Id.* (quoting *United States v. Peoples*, 29 M.J. 426, 429 (C.M.A. 1990)).

## II. CONCLUSION

The record is returned to The Judge Advocate General for further proceedings consistent with this opinion. A rehearing is authorized. Article 66(f)(2), UCMJ, 10 U.S.C. § 866(f)(2). Thereafter, the record will be returned to the court to complete appellate review under Article 66(d), UCMJ.


RICHARDSON, Senior Judge (concurring):

I concur that we should order a rehearing and not reassess Appellant's sentence in this case. I write separately to discuss important aspects of this case as they relate to the non-exhaustive factors announced in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013), and to expand upon those

factors when determining whether to reassess a sentence in light of the analysis and conclusions of the United States Court of Appeals for the Armed Forces (CAAF) regarding prejudice in *United States v. Harrington*, 83 M.J. 408 (C.A.A.F. 2023).

## I. BACKGROUND

As to the defense-requested instruction on the maximum punishment, the CAAF concluded "[Rule for Courts-Martial] 1005(e)(1)'s requirement that a military judge must instruct the panel members on the maximum cumulative sentence in no way prohibits an additional instruction on the maximum punishment for each offense of conviction" and "neither the practice of general unitary sentencing nor the Rules for Courts-Martial foreclosed the military judge from instructing the panel on the maximum punishment for each offense of conviction." *Harrington*, 83 M.J. at 415–18. The CAAF held "[t]he military judge therefore abused his discretion by declining Appellant's requested instruction based on an erroneous view of the law," adding in a footnote:

> To be clear, nothing in this opinion should be interpreted as requiring a military judge to instruct the members on the maximum sentence for each offense should the accused request such an instruction. We only hold that the military judge abused his discretion because of his misbelief that such an instruction was foreclosed as a matter of law. Because the military judge abused his discretion in this manner, we need not—and do not—express a view on what the outcome would have been here of applying the three-part test from [*United States v. Carruthers*, 64 M.J. 340, 346 (C.A.A.F. 2007)].[1]

*Id.* at 418, n.10.

Regarding prejudice resulting from the military judge's erroneous view of the law, the CAAF found that

> by denying Appellant's requested instruction, the military judge deprived Appellant of a powerful argument: that the President had deemed even the worst involuntary manslaughters to warrant no more than ten years of confinement. Given the focus

---

[1] The test in *Carruthers* for whether the failure to give a requested instruction is error is (1) whether the requested instruction is correct; (2) whether it is not substantially covered in the other instructions; and (3) whether "it is on such a vital point in the case that the failure to give it deprived [the accused] of a defense or seriously impaired its effective presentation." *United States v. Carruthers*, 64 M.J. 340, 346 (C.A.A.F. 2007) (alteration in original) (citation omitted).

placed on the involuntary manslaughter conviction by the Government during sentencing and under the specific facts of this case, we cannot be confident that the military judge's denial of the requested instruction did not substantially influence the adjudged sentence.

*Id.* at 422.

As to the delivery of the unsworn statements, the CAAF concluded: "Presentation of the victim's unsworn statement via a question-and-answer format with trial counsel violates the Rules for Courts-Martial because it contravenes the principle that an unsworn victim statement belongs solely to the victim or the victim's designee." *Id.* at 418 (citation omitted). The CAAF held "that the military judge abused his discretion by permitting trial counsel and the victim's parents to present the unsworn victim statements in this [question-and-answer] format." *Id.* at 420–21 (footnote omitted). Additionally, the CAAF found "[i]n this case, the military judge not only erred by allowing trial counsel and the victim's parents to present their unsworn victim statements in a question-and-answer format, but he also permitted those statements to be given from the witness stand." *Id.* at 423.[2]

The CAAF concluded that, "given the presence of two separate errors during sentencing, . . . the Government failed to meet its burden of demonstrating that the cumulative errors did not have a substantial influence on the adjudged sentence." *Id.* at 421. Accordingly, the CAAF affirmed the findings, but our decision was reversed with respect to the sentence. *Id.* at 423. The CAAF returned the record to The Judge Advocate General of the Air Force for remand to this court. *Id.* The remand stated that this court may "either reassess the sentence based on the affirmed findings or order a sentence rehearing." *Id.*

---

[2] The military judge provided this summary of his conversation with counsel under R.C.M. 802 regarding presentation of the anticipated unsworn statements:

> I did inform the parties if they wish to do so in a [question-and-answer] format because they indicated a desire to do a [question-and-answer] format unsworn for both the victim impact witnesses as well as the accused, I told them that they would be permitted under the circumstances to have their respective witnesses sit in the actual witness chair, even though they are not providing sworn testimony. But I would make that exception in this case if they chose to go that route.

Neither party objected to unsworn statements being delivered from the witness stand.

## II. ANALYSIS

The first and second *Winckelmann* factors squarely apply in this case. *Winckelmann*, 73 M.J. at 15–16. The third and fourth *Winckelmann* factors do not apply inasmuch as the findings were affirmed.[3] Part of the third factor can be applied: "whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses." *Id.* at 16. Whether to reassess a sentence is "based on the totality of the circumstances presented," and is not limited to the four factors articulated in *Winckelmann*. *Id.* at 15 (citation omitted). As such, in addition to the *Winckelmann* factors, we should apply an additional factor as part of the circumstances presented in this case: the CAAF concluded "that the Government failed to meet its burden of demonstrating that the cumulative errors did not have a substantial influence on the adjudged sentence." *Harrington*, 83 M.J. at 423.

Applying the *Winckelmann* factors to the instruction issue, I first consider the CAAF's analysis of prejudice, specifically that Appellant was "deprived of a powerful argument" when the military judge failed to tell the members that the maximum punishment for involuntary manslaughter was only ten years. Assuming the military judge would have given the defense-requested instruction if he correctly understood the law, the penalty landscape may have changed. The members would have known that while the maximum term of confinement they could impose for all offenses was 20 years, only 10 years would be authorized if Appellant was convicted only of involuntary manslaughter, and similarly 5 years for divers use of cocaine, 3 years for communicating a threat, and 2 years for divers use of marijuana.

Perhaps the penalty landscape may not have changed at all. The military judge in this case likely would not have given the defense-requested instruction even if he believed he could. The military judge was concerned the members might "give more weight to one offense over another offense or less weight to one offense over another offense simply based on a maximum punishment theory." Tellingly, the military judge stated he was "loath[ ] to give [the members] any kind of direction that interferes with their ability, their independent ability, to decide an appropriate sentence in this case based on their interpretation of the evidence, matters in aggravation and the matters in mitigation, as long as that sentence falls underneath the maximum punishment." Indeed, a military judge instructing the members what the President determined was the maximum punishment for each individual offense could unduly influence the

---

[3] As to the fourth factor, while we have "experience and familiarity" with the offenses to allow us reliably to determine what sentence would have been imposed at trial for any "remaining offenses," our task here arguably is more difficult: to determine what sentence would have been imposed but for the errors. *Winckelmann*, 73 M.J. at 16.

members to sentence Appellant to less—or perhaps more—time in confinement than they believe is warranted for all the offenses of which he was convicted. Moreover, if the military judge had given the instruction, he would have carefully crafted and given additional instructions to assuage his concerns that the defense-requested instruction would lead to the members' confusion or misapplication of the law. Finally, he could have prohibited trial defense counsel from making an argument to the members that contravened their independent duty to determine an appropriate sentence in Appellant's case, hindering Appellant's ability to make as powerful an argument.

Applying the *Winckelmann* factors to the victim-statement issue, I again consider the CAAF's analysis of prejudice. The CAAF concluded the "the primary problem[ was] that trial counsel's participation in the presentation of the unsworn victim statement blurred the important distinction between sentencing evidence presented by the Government and nonevidentiary sentencing matters presented by the victim" and the question-and-answer format from the witness stand "mimicked the presentation of actual sworn testimony that the panel members would have experienced during the rest of the trial, raising the potential for confusion among the members about the status of the statements." *Harrington*, 83 M.J. at 423. The CAAF made this conclusion even though the military judge gave the members an instruction that the victim

statements were unsworn, and did not solicit questions from them to the victims.[4],[5] The CAAF did not state whether it found prejudice from this error—finding it "might not have prejudiced Appellant on its own"—but concluded the Government failed to demonstrate the two sentencing errors combined "did not have a substantial influence on the adjudged sentence." *Id.*

The substance of the victim statements at issue was not found to be erroneous, only their presentation. The members may have given that substance more significance because of the question-and-answer format from the witness stand. But they also were charged with instructions that they each determine the weight and significance to give to the statements, and may consider that the statements were not under oath. Ultimately, it appears the substance would have been just as admissible and relevant without the erroneous presentation.

A Court of Criminal Appeals may reassess a sentence only if it is able to reliably determine that, absent the error, the sentence would have been "at least of a certain magnitude." *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citation omitted). Having applied the *Winckelmann* factors and considering the CAAF's conclusions regarding prejudice discussed *supra*, I am not convinced that we can reliably make such a determination in this case. I agree with the majority that in view of the CAAF's conclusions that the military

---

[4] Before the victim unsworn statements at issue were presented, the military judge gave the members the following instruction:

> Members of the Court, at this time you will hear some unsworn statements from individuals that are identified as victims of the crime. I want to read you a brief instruction though as to how you can consider these particular statements. An unsworn statement is an authorized means for a victim to bring information to the attention of the court and must be given appropriate consideration. The victim cannot be cross-examined by the Prosecution or Defense or interrogated by court members, or me, upon an unsworn statement but the parties may offer evidence to rebut statements of fact contained in it. The weight and significance to be attached to an unsworn statement rests within the sound discretion of each court member. You may consider that the statement is not under oath, its inherent probability or improbability, whether it is supported or contradicted by evidence in the case, as well as any other matter that may have a bearing upon its credibility. In weighing an unsworn statement, you are expected to use your common sense and your knowledge of human nature and the ways of the world.

[5] Appellant presented an unsworn statement to the members in question-and-answer format—presumably from the witness stand—and the military judge provided the members an instruction substantially similar to the victim-unsworn-statement instruction.

judge misapprehended the law and allowed erroneous presentation of victim matters, "the only fair course of action is to have [Appellant] resentenced at the trial level." *Id.* (quoting *United States v. Peoples*, 29 M.J. 426, 429 (C.M.A. 1990)).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court