# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40223**

————————————

**UNITED STATES**
*Appellee*

**v.**

**John K. BRASSIL-KRUGER**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 November 2022

————————————

*Military Judge:* Brian C. Mason.

*Sentence:* Sentence adjudged on 23 September 2021 by GCM convened at Joint Base Lewis-McChord, Washington. Sentence entered by military judge on 2 November 2021: Dishonorable discharge, confinement for 1 year, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Lieutenant Colonel Kirk W. Albertson, USAF; Major Matthew L. Blyth, USAF; Major Kasey W. Hawkins, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Sarah L. Mottern, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

At a general court-martial, a panel of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of sexual assault,

in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] Consistent with his pleas, Appellant was found not guilty of one specification of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920.[2] The panel sentenced Appellant to a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises nine assignments of error which we have reordered and reworded: (1) whether Appellant's convictions were legally and factually sufficient; (2) whether the military judge abused his discretion in denying a Defense-requested instruction; (3) whether trial counsel committed prosecutorial misconduct by improperly commenting on Appellant's right to remain silent; (4) whether the military judge abused his discretion by granting the Government's motion to admit evidence pursuant to Military Rule of Evidence (Mil. R. Evid.) 412; (5) whether the military judge abused his discretion by denying Appellant's motion to admit evidence pursuant to Mil. R. Evid. 412; (6) whether the military judge abused his discretion by allowing the Government to withdraw the specification prior to Appellant's entry of pleas; (7) whether the Government violated Appellant's due process rights by charging him with sexual assault under a theory of lack of consent, but convicted him under a different theory; (8) whether the Government can prove beyond a reasonable doubt that the military judge's failure to instruct the panel that a guilty verdict must be unanimous was harmless; and (9) whether the cumulative error doctrine requires relief.

With respect to issues (5), (6), (7), (8), and (9), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant joined the Air Force in March 2018. In August 2018, he arrived at his first duty station, Joint Base Lewis-McChord (JBLM), Washington. On the evening of 7 August 2020, Appellant went with friends to a social gathering

---

[1] All references to the UCMJ, Military Rules of Evidence, and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The Government withdrew and dismissed without prejudice one additional specification of sexual assault, in violation of Article 120, UCMJ, prior to Appellant's entry of pleas.

at American Lake, near JBLM. CB[3] was also present at the gathering with a group of her friends. CB and Appellant did not know each other and had no interaction at the gathering.

Later that night, Appellant and CB separately left the gathering at the lake to attend a house party in the local area. CB rode to the party with her friend, JH. CB testified there were approximately 20 to 25 people at the party when she arrived, and that she only knew a handful of the guests. At the party, CB primarily interacted with JH and Specialist (SPC) KH. CB explained that she was romantically interested in SPC KH, and that they had shared a kiss earlier in the evening. CB testified that she did not interact with Appellant at the party.

CB described that she became tired and intoxicated as the night went on. CB testified that she consumed a total of four beers over the course of eight hours. JH and SPC KH confirmed during their testimony that CB appeared intoxicated. JH testified that he offered to let CB sleep in his truck if she felt uncomfortable laying down at the party. Around this time, SPC KH made a makeshift bed for himself and CB in the common area of the house near the kitchen. CB testified that after laying down in the makeshift bed, she fell asleep within 10 to 15 minutes.

JH testified that he checked on CB around 0230 and tried to wake her, but she did not want to move. He explained that she was sleeping next to SPC KH and had her arm around his chest. At that time, JH explained that there were approximately 10 to 12 people asleep in the general vicinity of CB. JH stated that he and Appellant drank "one last shot" of alcohol and returned to their respective vehicles to sleep.

CB's next memory was being awakened by Appellant penetrating her vagina with his fingers and mouth. During cross-examination, she explained that she woke up when she had an orgasm, and noticed Appellant's face by her vagina. CB testified that she did not consent to sexual contact or otherwise convey any interest in Appellant prior to or during the sexual assault. CB then testified that she feigned that she needed to go to the bathroom, got up, by-passed the bathroom, and immediately departed the residence. Her first stop was at JH's vehicle.

JH testified that he was sleeping in his truck when he awoke to CB "crying hysterically" while on the phone saying, "He wouldn't stop touching me, he wouldn't stop touching me." JH described being confused as to what was going on. He further testified that he "mistakenly" fell back asleep and did not wake

---

[3] At the time of the offenses, CB was an active duty servicemember in the United States Army.

up until around 0800, at which time CB was gone. CB testified that after going to JH's truck, she called a civilian friend, Mr. MG. She stated that Mr. MG then sent an Uber to pick her up and bring her to Mr. MG's residence. The following day CB reported the sexual assault to First Lieutenant TY.

On 8 August 2020, CB submitted to an examination performed by a sexual assault nurse examiner. Samples were collected from her vagina, cervix, pubic mound, inner thighs, and breasts. The following day, on 9 August 2020, oral swabs, hand swabs, and fingernail clippings were collected from Appellant. Subsequent DNA testing showed Appellant's DNA was present on CB's pubic mound, and male DNA was found on both the vaginal and cervical swabs, for which Appellant could not be excluded. In fact, MG, a forensic DNA examiner, from the United States Army Criminal Investigation Laboratory, who was recognized as an expert in the fields of forensic DNA and forensic serology, testified that the mixed profile from CB's "pubic mound swabs [was] at least 120 trillion times more likely if it originated from [CB] and [Appellant] than if it originated from [CB] and an unknown individual."

Immediately following the collection of the samples from Appellant, he was interviewed by investigators from the Air Force Office of Special Investigations (AFOSI). Appellant waived his Article 31(b), UCMJ, 10 U.S.C. § 831(b), rights and agreed to speak to the agents. Appellant's interview was video recorded and admitted as a prosecution exhibit. During the interview, Appellant acknowledged that he saw CB at the house party, and that she was intoxicated. For the first 26 minutes of Appellant's interview, he denied the sexual encounter telling agents "I don't even know this girl from Adam," and "I didn't make any advances or sexual advances on her, or anything like that." However, when confronted by agents on the inconsistencies in his statement, Appellant spontaneously brought up DNA testing and said that the "the sexual assault kits, I can already guarantee you it's gonna come back with my DNA, like it's gonna be me, because that did happen."

Appellant then told the agents that after he finished drinking he went to his vehicle to sleep, but he went back inside the house to sleep because he was cold. He indicated that he lay on the floor next to two people who were already asleep and confirmed for the agents that the two people were CB and SPC KH. He told the agents that he assisted CB in taking off her pants and that he penetrated her vagina with his fingers. Upon further questioning, Appellant also added that he "ate her out for just a little bit." Appellant maintained to investigators that the encounter was consensual. Appellant also apologized for not being initially truthful with the agents. Appellant then stated he thought the sexual encounter ended because "she was still half asleep or whatever and didn't understand it" and also "[m]aybe she just wasn't with it." After the

incident, CB got up and went to the bathroom, and Appellant returned to his vehicle to sleep.

The panel of officer and enlisted members found Appellant guilty of two specifications of sexual assault. One specification was for contact between Appellant's mouth and CB's vulva without CB's consent, and one specification was for penetration of CB's vulva by Appellant's finger without CB's consent.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant contends his convictions for sexual assault are both legally and factually insufficient. Specifically, Appellant argues the Government failed to prove lack of consent, or in the alternative, that there was not a reasonable mistake of fact as to consent. The premise of Appellant's contention is that CB is not a credible witness; in support of this claim, Appellant highlights inconsistencies in her testimony. We are not persuaded by Appellant's contentions, and find no relief is warranted.

#### 1. Additional Background

During the Government's case-in-chief, trial counsel presented testimony from CB and a number of witnesses who were either present at the party or involved with the subsequent investigation. These witnesses included AFOSI Special Agent DE; Captain CF, the nurse who conducted CB's sexual assault examination; Ms. MB, a forensic examiner from the United States Army Criminal Investigation Laboratory; and a number of party goers, including JH and SPC KH. These witnesses testified on a number of issues, including the events leading up to the sexual assault, interactions between Appellant and CB on the evening of the sexual assault, Appellant's and CB's levels of intoxication, events following the sexual assault, and Appellant's statements to law enforcement.

#### 2. Law

Issues of legal and factual sufficiency are reviewed de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "Our assessment of legal and factual sufficiency is limited to evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States*

*v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (internal quotation marks and citation omitted), *cert. denied*, __ U.S. __, 139 S. Ct. 1641 (2019). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d); *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted).

In order to find Appellant guilty of sexual assault in violation of Article 120, UCMJ, as alleged in Specification 1 of the Charge, the panel members were required to find the following beyond a reasonable doubt: (1) that at or near Tacoma, Washington, on or about 7 August 2020, Appellant committed a sexual act upon CB by causing contact between Appellant's mouth and CB's vulva; and (2) that he did so without CB's consent. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(d).

In order to find Appellant guilty of sexual assault in violation of Article 120, UCMJ, as alleged in Specification 2 of the Charge, the panel members were required to find the following beyond a reasonable doubt: (1) that at or near Tacoma, Washington, on or about 7 August 2020, Appellant committed a sexual act upon CB by penetrating CB's vulva with his body part, to wit: his finger,

with an intent to gratify Appellant's sexual desire; and (2) that he did so without CB's consent. *See MCM*, pt. IV, ¶ 60.b.2(d).

Article 120, UCMJ, provides *inter alia* that "consent means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent." 10 U.S.C. § 920(g)(7)(A). Article 120, UCMJ, further provides that "[a] sleeping, unconscious, or incompetent person cannot consent" and that "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent." 10 U.S.C. § 920(g)(7)(B)–(C).

An accused charged with sexual assault under Article 120, UCMJ, may raise any applicable defense available under the UCMJ or the Rules for Courts-Martial, including the special defense of ignorance or mistake of fact. Ignorance or mistake of fact "is a defense to an offense that the accused held, as a result of . . . mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." Rule for Courts-Martial (R.C.M.) 916(j)(1).

Whether a mistake must be objectively reasonable as well as actual depends on the mens rea applicable to the element of the offense that is in question.

> If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.

*Id.*

### 2. Analysis

During Appellant's court-martial, the Government introduced convincing evidence of Appellant's guilt. Most significant was the testimony of CB, who described with clarity how she was awakened by the Appellant penetrating her vagina with his finger and mouth. CB also testified clearly that she did not consent to the sexual assault or otherwise convey any interest that she wished to engage in sexual activity with Appellant either prior to or during the sexual assault. A reasonable factfinder could conclude Appellant was guilty of the charged offenses based solely on CB's testimony. As an evidentiary standard, proof beyond a reasonable doubt does not require more than one witness to credibly testify. *See United States v. Rodriguez-Rivera,* 63 M.J. 372, 383 (C.A.A.F. 2006) (stating the testimony of a single witness may satisfy the

Government's burden to prove every element of a charged offense beyond a reasonable doubt).

However, CB's testimony was also supported by the DNA evidence showing that Appellant's DNA was present on CB's pubic mound, and that male DNA for which Appellant could not be excluded was found on the vaginal and cervical swabs taken from CB. The Government also supported CB's testimony with circumstantial evidence, including third-party observations concerning CB's level of fatigue and intoxication immediately prior to the sexual assault, the sleeping arrangements, the lack of any interaction between Appellant and CB prior to the sexual assault, and the fact that CB was interested in SPC KH, the person she slept next to the evening of the sexual assault.

The crux of Appellant's argument at trial and on appeal is that his convictions were legally and factually insufficient because CB is not credible. Specifically, Appellant points to inconsistencies in CB's testimony regarding the amount of alcohol she consumed, and her description of the sexual assault to JH and SPC KH, which Appellant argues was contradicted by the testimony of both JH and SPC KH. After reviewing the entire record and considering the minor inconsistencies in CB's testimony, we conclude that there is sufficient evidence to support the findings of guilt. We are not persuaded that these minor inconsistencies equate to reasonable doubt. Additionally, we find that Appellant's pernicious statements to law enforcement adds all the more basis for a factfinder to conclude Appellant was guilty.

We also find that there was sufficient evidence to support a conclusion that Appellant did not have a reasonable mistake of fact as to consent. Again, CB's testimony and Appellant's own words were enough to overcome this defense. In order to accept Appellant's argument that he had a reasonable mistake of fact, the members would have had to overlook Appellant's initial denial that the sexual encounter occurred, the ever-changing nature of his statements to investigators, and the fact that he returned to his car immediately following the alleged consensual sexual activity. Additionally, Appellant's own statements to investigators where he describes CB as being "half asleep" and not understanding what was going on was evidence that he really did not believe she consented, and that any such belief was not reasonable under the circumstances. We agree with the Government that these facts do not support a consensual sexual experience, but instead suggest culpability, consciousness of guilt, and a lack of credibility insofar as Appellant claimed the sexual acts were consensual. Therefore, we find that a reasonable factfinder could have rejected Appellant's claim and concluded the Government had proven that there was no valid mistake of fact defense beyond a reasonable doubt.

We conclude that viewing the evidence produced at trial in the light most favorable to the Prosecution demonstrates a rational trier of fact could have

found the essential elements of sexual assault beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. Furthermore, after weighing all the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41 (quoting *Turner*, 25 M.J. at 325).

## B. Defense-Requested Instruction on Consent

Appellant argues the military judge abused his discretion in denying a Defense-requested findings instruction. Appellant also argues that the military judge erred in giving his instructions on consent to the members. Specifically, Appellant contends that the military judge erred by blending theories of culpability by instructing the members that "[a] sleeping, unconscious, or incompetent person cannot consent." We find that the military judge did not abuse his discretion or otherwise err in instructing the members, and conclude that no relief is warranted.

### 1. Additional Background

At trial, Appellant's trial defense counsel requested the following instruction: "CB's level of intoxication and the fact that she might have been asleep, as it pertains to her ability to consent, is not relevant to the charge." The military judge denied Appellant's request for the special instruction. Subsequently, during trial, and consistent with the Government's charging theory, the military judge instructed the panel that the Government bore the affirmative burden of showing beyond a reasonable doubt that the sexual acts were done without the consent of CB.[4] The military judge then, over defense objection, provided the following definition of consent to the members:

> "Consent" means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent. Submission resulting from the use of force, threat of force, or placing another in fear also does not constitute consent. A current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issue does not constitute consent. A sleeping, unconscious, or incompetent person cannot consent. All the surrounding circumstances are to be considered in determining whether a person gave consent.

---

[4] The military judge's instructions on the elements of the offense are consistent with the elements described in the legal and factual sufficiency section of this opinion.

**2. Law**

"[A]ny party may request that the military judge instruct the members on the law as set forth in the request." R.C.M. 920(c). However, the military judge has substantial discretionary power in deciding what non-required instructions to give. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (first citing *United States v. Smith*, 34 M.J. 200 (C.M.A. 1992); and then citing R.C.M. 920(c), Discussion). Denial of a defense-requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 345–46 (C.A.A.F. 2007) (citations omitted). "A military judge abuses his discretion[: (1)] when. . . the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted).

We apply a three-part test to evaluate whether the failure to give a requested instruction is error: "(1) [the requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [Appellant] of a defense or seriously impaired its effective presentation." *Carruthers*, 64 M.J. at 346 (first and second alteration in original) (quoting *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003)). All three prongs of the test must be satisfied in order to find error. *United States v. Barnett*, 71 M.J. 248, 253 (C.A.A.F. 2012).

"Questions pertaining to the substance of a military judge's instructions, as well as those involving statutory interpretation, are reviewed de novo." *United States v. Voorhees,* 79 M.J. 5, 15 (C.A.A.F. 2019) (citation omitted).

**3. Analysis**

We first address Appellant's contention that the military judge abused his discretion in denying Appellant's proposed instruction on consent. Applying the *Carruthers* three-part test, we find Appellant's claim fails the first prong, which requires him to show the requested instruction is a correct statement of law. In fact, we find trial defense counsel's proposed instruction is a misstatement of the law. Specifically, the proposed instruction disregards the statutory definition of consent. *See* 10 U.S.C. § 920(g)(7)(A)–(C). Here, Appellant was charged with committing sexual acts on CB without her consent. Therefore, consent was an element of the offenses, and was expressly alleged in the text of the specifications. The military judge gave the statutory definition of

consent, which includes that "[a] sleeping, unconscious, or incompetent person cannot consent" and that "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent." 10 U.S.C. § 920(g)(7)(B)–(C). Because Appellant cannot meet the first prong, we need not address the other prongs, and conclude the military judge did not abuse his discretion in declining to give trial defense counsel's proposed instruction.

Turning to Appellant's second contention that the military judge erred by instructing the panel that "[a] sleeping, unconscious, or incompetent person cannot consent," we find no error. Here, the military judge was required to provide the statutory definition of consent, because lack of consent, as discussed above, was an element of the offenses. Moreover, when taken as a whole, the instructions imparted to the panel that the Government retained the burden of affirmatively proving a lack of consent consistent with the offenses charged in this case. This is particularly true given that the military judge also instructed the panel on the defense of mistake of fact as to consent. In conclusion, we find the military judge's instruction on consent was an accurate representation of the law based upon the facts presented at trial.

## C. Mil. R. Evid. 412 Ruling[5]

Appellant contends that the military judge abused his discretion by allowing the Government to present evidence under Mil. R. Evid. 412. Specifically, Appellant argues the military judge allowed the Government to introduce evidence of CB's chastity, which did not fall within any exception to the general rule prohibiting admission of evidence concerning other sexual behavior of a victim. Appellant requests that we set aside the findings and sentence. We find no relief is warranted.

### 1. Additional Background

The scheduling order in this case set trial for 20 September 2021 and required counsel to "file any required notifications in accordance with the applicable rule(s)[,] or 15 August 2021, whichever is earlier." Shortly before trial, the Government submitted a notice of intent to offer evidence, pursuant to Mil. R. Evid. 412, that CB had (1) only engaged in vaginal intercourse (penile penetration of her vulva) on one prior occasion, which was approximately one week before the charged incident, and that she experienced an orgasm on that occasion; and (2) never been vaginally penetrated orally or digitally prior to the charged incident.

---

[5] This issue was filed under seal; therefore, we limit our discussion of sealed material to that which is necessary to resolve the issue.

The notice was addressed during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session on 20 September 2021. During the closed hearing, the military judge questioned trial counsel regarding the timeliness of the notice, and the Government proffered that it needed to obtain expert assistance in order to ask CB the above questions in the notice. Trial defense counsel objected to the testimony on the grounds that trial counsel's notice was not timely and the proffered evidence did not fit within an exception to Mil. R. Evid 412. The military judge ruled the evidence was inadmissible on timeliness grounds. The military judge also advised the parties that they could request reconsideration of his ruling depending on CB's testimony.

Our review of the record leads us to believe that the Government strategically chose not to introduce evidence that CB experienced an orgasm during the sexual assault in their case-in-chief, as it was neither addressed in their opening statement nor during direct examination of CB. The evidence was, however, introduced by trial defense counsel during cross-examination of CB. Specifically, in response to defense questioning, CB acknowledged that she woke up having an orgasm and saw Appellant between her legs. She also acknowledged she did not mention the orgasm while being questioned by trial counsel, but she had previously shared that fact with both criminal investigators and the trial defense team. After this information was elicited, trial counsel requested the military judge reconsider his prior Mil. R. Evid. 412 ruling.

During the closed hearing that followed, trial counsel argued the Government should be allowed to introduce the evidence, consistent with their initial Mil. R. Evid. 412 notice, to rebut the fact that the trial defense counsel was planning to argue that an orgasm is not typically associated with a sexual assault. Trial defense counsel argued the evidence in the prior notice was still not permissible under Mil. R. Evid. 412, as it did not fit within any of the rule's exceptions, but confirmed to the military judge that it was their intent to argue an orgasm is not typically associated with a sexual assault. The military judge found that trial defense counsel had "opened the door" and that trial counsel would be allowed to introduce evidence of CB's earlier sexual encounter.

Following the military judge's ruling, trial counsel elicited the following testimony from CB on redirect:

> Q. Now, you have testified that during the charged conduct, your body felt an orgasm, is that correct?
>
> A. That's correct, ma'am.
>
> Q. Okay. And prior to that date, had you ever had sex with someone with their mouth on your vagina?
>
> A. No, ma'am.

Q. Prior to that date, had you ever had anyone put their fingers inside of your vagina?

A. No, ma'am.

Q. Had you ever had sex with someone where they put their penis in your vagina?

A. Yes, ma'am.

Q. How many times?

A. Just once, ma'am.

Q. Do you think that you orgasmed that prior time?

A. Yes, ma'am.

Trial counsel then asked CB to describe why she was not sexually aroused during the sexual assault. Additionally, trial counsel asked CB to compare the orgasm she experienced during the assault to the one that she experienced during her previous consensual sexual experience. Trial defense counsel then conducted recross-examination of CB and elicited the following testimony:

Q. Okay. And now I'm gonna talk to you about this orgasm again, because it's an integral part of the case. So you did, in fact, have an orgasm that night?

A. Yes, ma'am.

Q. You've had orgasms before this party on 7 August?

A. Yes, ma'am.

. . . .

Q. You've had [an] orgasm since this party?

A. Yes, ma'am.

Q. You're married?

A. Yes, ma'am.

Q. You've had [an] orgasm?

A. Yes, ma'am.

Q. You know what an orgasm is?

A. Yes, ma'am.

Q. And on this night, 7 August 2020, you woke up to an orgasm?

A. Yes, ma'am.

During the recross-examination of CB, trial counsel objected, based on Mil. R. Evid. 412, to trial defense counsel's question regarding CB having an orgasm since the night of the charged incident. That objection was overruled.

In closing argument, trial counsel used the fact that CB experienced an orgasm during the assault—a fact she voluntarily disclosed to investigators—to bolster CB's credibility under the theory that she had nothing to gain by telling investigators about it in the first place. We note trial counsel did not argue that CB was mistaken in what she experienced, or was too sexually inexperienced to recognize whether she had in fact had an orgasm, both points they raised in their initial Mil. R. Evid. 412 notice.

Trial defense counsel argued during their closing argument that CB's orgasm was evidence of consent. Trial defense counsel also used CB's "omission" of the orgasm on direct exam to argue that CB was not being honest with the members.

**2. Law**

We review a military judge's ruling on a Mil. R. Evid. 412 motion for an abuse of discretion. *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted). A military judge abuses his or her discretion when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. White*, 80 M.J. 322, 327 (C.A.A.F. 2020) (quoting *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)). The application of Mil. R. Evid. 412 to proffered evidence is a legal issue that we review de novo. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010).

Under Mil. R. Evid. 412(a), evidence of an alleged victim's sexual predisposition and evidence that an alleged victim engaged in other sexual behavior is generally inadmissible. "'Sexual behavior' includes any sexual behavior not encompassed by the alleged offense. . . . [And] 'sexual predisposition' refers to a victim's mode of dress, speech, or lifestyle that does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the factfinder." Mil. R. Evid. 412(d).

Our superior court has long held that the burden is on the moving party to overcome Mil. R. Evid. 412's general rule of exclusion by demonstrating an exception applies. *See, e.g.*, *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998) (citation omitted); *United States v. Fox*, 24 M.J. 110, 112 (C.M.A. 1987)

("When the defense seeks to present evidence which is subject to the exclusionary provisions of Mil. R. Evid. 412, it must clearly demonstrate that the proffered evidence is relevant, material, and favorable to its case." (citations omitted)).

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a). "We evaluate the harmlessness of an evidentiary ruling by weighing: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Bowen,* 76 M.J. 83, 89 (C.A.A.F. 2017) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

### 3. Analysis

We note at the outset that the military judge's ruling on the Government's motion for reconsideration of the evidence at issue offered little explanation, and has left this court without any analysis to support the ruling. The military judge did not state whether or not he determined CB's prior sexual experience amounted to "other sexual behavior" or evidence of her "sexual predisposition," much less which Mil. R. Evid. 412 exception might apply. As a result, we give the military judge's ruling less deference than we would have had he explained his rationale.

We conclude evidence of CB's prior sexual behavior squarely falls within Mil. R. Evid. 412(a)(1), and was, therefore, not admissible unless an exception applied. We cannot discern any exception that would apply. The prior sexual conduct evidence was not offered to show that someone else was the source of any evidence, and the prior conduct was not "with respect to" Appellant. Moreover, the evidence was offered by the Government over the Defense's objection, so there is no plausible argument that its exclusion would violate Appellant's constitutional rights. One point of Mil. R. Evid. 412 is to shield sexual assault victims from having to disclose private details about their sex lives which are irrelevant to the case at hand. *See, e.g.*, *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2001). The rule is not confined to Defense-proffered evidence; it applies equally to evidence offered by the Government. *United States v. Banker,* 60 M.J. 216, 223 (C.A.A.F. 2004). Therefore, this evidence should have been excluded, and the military judge abused his discretion by admitting it.

Finding error, we test the error for material prejudice to Appellant's substantial right. We find none. *See United States v. Carista*, 76 M.J. 511, 516–17 (A. Ct. Crim. App. 2017) (finding no material prejudice despite also finding military judged erred when, in the absence of good cause, he allowed the

Government to present testimony covered by Mil. R. Evid. 412 without proper notice). Turning our attention to the first two factors set out in *Bowen*—the strength of the parties' respective cases, we find, as noted above, that the Government's case was compelling. In addition to CB's testimony, the Government's case was supported by Appellant's inconsistent statements to law enforcement, multiple third-party observations that CB was tired and intoxicated, evidence that Appellant fled the scene, evidence of CB's near-immediate reporting of the offenses, and forensic evidence. On the other hand, Appellant's case relied on his claim that the encounter was consensual, yet Appellant himself acknowledged he had only met CB the night of the assault and that they had minimal interaction, if any interaction at all, before the assault. Therefore, we find these first two factors weigh in favor of the Government.

In looking at the final two factors—the materiality and quality of the evidence in question, we find the evidence of prior and post-assault orgasms offers only marginal material support to the Government's case. The fact that the Government totally abandoned any mention of CB's sexual inexperience in their closing argument supports this conclusion. Moreover, the fact she had experienced an orgasm on a previous occasion seems entirely irrelevant to the question of whether she consented to Appellant's conduct. At best, CB's testimony about the qualitative difference between how she felt during the assault and how she felt on a prior occasion might operate to address assumptions possibly held by some of the members. Absent expert testimony on the matter, however, the evidence was entirely speculative in nature and unhelpful. We find that both of these factors also weigh in favor of the Government, and conclude that this evidence played a minimal role, if any, in the ultimate verdict.

We further fail to see how Appellant was prejudiced, as trial defense counsel was able to exploit the military judge's ruling in order to elicit further irrelevant testimony about CB's post-assault sexual activity. Moreover, trial defense counsel sought to exploit all of this evidence by arguing that CB was in no way mistaken that she experienced an orgasm during the assault, which was evidence—according to the Defense—that CB consented to the sexual encounter. In other words, the Defense was able to highlight the fact CB did not initially testify about the orgasm in her direct testimony, as well as argue the evidence indicated consent on her part. Therefore, we find no material prejudice to Appellant's substantial rights, and we grant no relief in spite of the military judge's error.

## D. Trial Counsel's Findings Argument

Appellant claims trial counsel committed prosecutorial misconduct during findings argument. Specifically, Appellant claims trial counsel improperly commented on Appellant's constitutional right to remain silent by using the word "uncontroverted." Appellant asks this court to set aside the findings and

sentence. We disagree with Appellant's contentions and find no relief is warranted.

### 1. Additional Background

Prior to closing arguments, the military judge instructed the members on Appellant's "absolute right to remain silent," and that they were not permitted to infer guilt from the fact that Appellant did not testify. The military judge also properly placed the burden of proof on the Government to prove its case beyond a reasonable doubt.

During closing argument, trial counsel argued that "[i]t's uncontroverted that [CB] was asleep in there when he went back in. You'll hear it in the interview multiple times, she was asleep." Moments later, trial counsel argued that the:

> [f]irst element is that [Appellant] caused [his] mouth to touch [CB's] vulva. That's uncontroverted. Not only do you have her saying it happened, she woke up and someone's head was down there. She saw the top of his head. She didn't even know who he was. He admitted to it, eventually, when that guilt festered and boiled over. And then you heard from Ms. [MB] yesterday, in the white suit, she came here and testified from the United States Army Criminal Investigation Laboratory, who testified that it was 120 trillion times more likely that his DNA was in her vaginal vault and her cervix. Uncontroverted that his mouth touched her vulva.

Trial defense counsel did not object to either of these arguments.

### 2. Law

"We review prosecutorial misconduct and improper argument de novo and where . . . no objection is made, we review for plain error." *Voorhees*, 79 M.J. at 9 (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). This rule exists to "prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished. It is important to encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Reist*, 50 M.J. 108, 110 (C.A.A.F. 1999) (internal quotation marks and citation omitted).

"Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). The burden of proof under a plain error review is on the appellant. *See United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). Once the

appellant "meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted).

"[T]rial counsel may not comment directly, indirectly, or by innuendo, on the fact that an accused did not testify in his defense." *Id.* (quoting *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A. 1990)). However, "it is permissible for trial counsel to comment on the defense's failure to refute government evidence or to support its own claims." *United States v. Paige*, 67 M.J. 442, 448 (C.A.A.F. 2009) (citations omitted). A "violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the [members] 'naturally and necessarily' would interpret the summation as comment on the failure of the accused to testify." *Id.* (alteration in original) (quoting *Carter*, 61 M.J. at 33).

Counsel are to limit arguments to evidence in the record and reasonable inferences that can be drawn from that evidence. *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). While a trial counsel "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Fletcher*, 62 M.J. at 179 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation but on the argument as viewed in context." *Baer*, 53 M.J. at 238 (citations omitted). "[I]t is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id.*

### 3. Analysis

In *Carter*, our superior court found that trial counsel's use of the words "uncontroverted" and "uncontradicted" 11 times during argument made the appellant's decision not to testify a "centerpiece of the closing argument." *Carter*, 61 M.J. at 34. Even after the military judge instructed the members in that case that they could not draw any adverse inference from the appellant's failure to testify, trial counsel continued that type of argument. *Id.* The court found the comments "were not isolated or a 'slip of the tongue,'" and cited to *United States v. Moore*, 917 F.2d 215, 225 (6th Cir. 1990), for the proposition that the isolated nature of comments by a prosecutor should be taken into account. *Carter*, 61 M.J. at 34.

Here, trial counsel, in the course of an argument that spanned 16 transcript pages, characterized the evidence that CB was asleep when Appellant reentered the house as "uncontroverted." We find trial counsel's argument was

firmly based on the testimony of CB, JH, and SPC KH, who reported that CB was tired and went to sleep in the common area of the house prior to the sexual assault. In fact, we note that there was no witness who testified that this was not the case. We also note that the members had the benefit of Appellant's version of events in the form of the AFOSI interview, where Appellant acknowledged that CB was asleep when he laid down near her. Later, trial counsel characterized the evidence that Appellant placed his mouth on CB's vulva as "uncontroverted." We find this statement also to be supported by evidence before the members, including forensic evidence and Appellant's statement to investigators where he acknowledged placing his mouth on CB's vulva. Additionally, viewing trial counsel's later statement in context, it is clear that trial counsel was describing the element of the sexual act and not the contested element of consent.

Trial counsel's closing argument contained only two instances where specific testimony was labeled "uncontroverted." Both instances stemmed from incidents in which multiple witnesses were present and Appellant's version of events was already before the members in the form of his AFOSI interview. The record also establishes that trial counsel's comments were tailored to address two distinct facts: (1) that CB was asleep when Appellant reentered the house, and (2) that Appellant placed his mouth on CB's vulva. Stated another way, trial counsel did not broadly describe all the facts and evidence as uncontradicted. *See Carter,* 61 M.J. at 34 (finding error where trial counsel generally represented the facts and evidence as "uncontroverted"). Furthermore, trial counsel did not impermissibly draw the members' attention to Appellant's right not to testify, but instead was referencing Appellant's own statement, which was already before the members. Therefore, we find no error, plain or otherwise.

## III. CONCLUSION

The findings and the sentence as entered are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

19